In the Matter of the ALLEGED MENTAL ILLNESS OF John Joseph KINZER.

No. C4–85–809.

Court of Appeals of Minnesota.

Oct. 15, 1985.

Thomas Bennett Wilson III, Gayle Gaumer, Edina, for Kinzer.

Hubert H. Humphrey, III, Atty. Gen., Gary A. Van Cleve, Sp. Ass't. Atty. Gen., St. Paul, for Minnesota Security Hospital.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Appellant, John Kinzer, appeals from two orders of the Nicollet County Court. The first, issued from the bench on March 25, 1985, found that jurisdiction and venue were proper. The second authorized imposition of electroconvulsive therapy (ECT) by a written order dated March 28, 1985. Respondent, Minnesota Security Hospital, moves to dismiss this appeal as moot. We deny the motion to dismiss, affirm the venue ruling, but reverse the order authorizing treatment.

## FACTS

The Mental Health Division of the Hennepin County District Court committed Kinzer to Anoka State Hospital as mentally ill on July 2, 1981. Kinzer transferred to Minnesota Security Hospital (MSH) in 1983. On June 13, 1983, the Nicollet County Court authorized MSH to administer one series of electroconvulsive therapy treatments, not to exceed 30. This authorization was issued following a hearing pursuant to *Price v. Sheppard,* 307 Minn. 250, 239 N.W.2d 905 (1976). Electroconvulsive therapy was to be completed by December 7, 1983. Thirty individual treatments were administered to Kinzer pursuant to the June, 1983, order.

On September 2, 1983, the same court issued an *ex parte* order authorizing MSH to continue the course of electroconvulsive therapy followed by maintenance ECT for up to three years. MSH administered further electroconvulsive therapy to Kinzer under this order until October 12, 1983.

The Hennepin County District Court Mental Health Division held recommitment hearings and ordered Kinzer's continued commitment on December 9, 1983, and on December 18, 1984.

On February 20, 1985, MSH began administering a series of electroconvulsive therapies on Kinzer, relying on the September 2, 1983, order. Neither Kinzer nor his attorney were given notice or an opportunity to be heard prior to these treatments. On March 8, 1985, Kinzer's attorney sought and obtained a temporary restraining order from the committing court, the Mental Health Division of the Hennepin County District Court, prohibiting further administration of electroconvulsive therapy without valid consent or authorization pursuant to *Price.* The committing court notified all parties of the restraining order on March 13, 1985.

On March 13, 1985, MSH petitioned the Nicollet County Court for a *Price* hearing to authorize electroconvulsive therapy. The hearing was scheduled for March 15, 1985. No one notified Kinzer's attorney of the hearing. The attorney learned of the

hearing when he happened to telephone the Nicollet County Court and obtained a continuance to March 25th. MSH then duly served counsel and his client with notice of the March 25th hearing. At the hearing, the court held that jurisdiction and venue were proper in Nicollet County, but did not rule on Kinzer's motion to dismiss for lack of service. Kinzer appeals the oral orders.

By written order dated March 28, the Nicollet County Court authorized electroconvulsive therapy to be administered on Kinzer. It made the following findings:

1. The Court takes judicial notice of the Findings of Fact found in its Order dated June 13, 1983, and said Findings of Fact are hereby incorporated by reference.[1]

2. In accordance with the Order of June 13, 1983, the medical authorities at Minnesota Security Hospital (MSH) administered a course of 15 ECT treatments to the patient. There was a positive response to the ECT.

3. In a few weeks the patient suffered a relapse and the hospital responded by administering a course of 30 ECT treatments. Patient again responded well and remained free from any symptoms of catatonia until January of 1985. Neuroleptic medications were then attempted but patient did not respond.

4. Patient had a history of aggression, but following the ECT his behavior improved so that he was eventually placed on a less secure unit. With his reversion to catatonia, it has been necessary to place him in a more secure environment.

5. In February of 1985, believing that the Court's order of September 2, 1983, authorized additional ECT treatments, the medical authorities at MSH commenced ECT treatments again. A total of 13 were administered until the hospital was forced to cease the ECT because of a restraining order issued by Hennepin County District Court. The hospital would have preferred to complete a ser-

ies of 30 treatments so as to reduce the possibility of relapse.

6. *At the present time patient is free from any symptoms of catatonia;* however, further ECT will be necessary if the patient suffers a relapse.

(emphasis added). It ordered that:

In the event the patient, John Joseph Kinzer, appears to be exhibiting symptoms which would indicate he is relapsing into a catatonic condition, the medical authorities at the Minnesota Security Hospital are authorized to administer ECT treatments, not to exceed 30 in number.

Kinzer appealed this order. Pursuant to this order, MSH administered a series of 30 electroconvulsive therapies ending on June 30, 1985.

MSH now moves to dismiss the appeal on the ground of mootness. MSH claims that this appeal is moot because it "has exhausted its authority to administer ECT pursuant to [the March 28, 1985] order."

## ISSUES

1. Is this appeal moot?

2. Is venue of a *Price* hearing in the county where the hospital is located proper?

3. Did the trial court err in issuing its order, unlimited in duration, authorizing administration of electroconvulsive therapy when the medical authorities determine that the appellant is relapsing?

## ANALYSIS

### I.

*Mootness*

MSH moves to dismiss this appeal on the ground of mootness. The March 28, 1985, order authorized MSH to administer electroconvulsive therapy on Kinzer. MSH administered 30 electroconvulsive therapies, ending June 30, 1985. MSH claims that it has exhausted its authority to administer

---

**1.** The previously stated facts repeat the relevant findings from the June, 1983, orders.

electroconvulsive therapy pursuant to the March 28, 1985, order.

Even if this case is moot, a moot case may be reviewed if it raises issues "capable of repetition yet evading review." *In re Peterson,* 360 N.W.2d 333, 335 (Minn.1984) (citing *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911)).

■ Aspects of this case make it capable of repetition yet evading review. On its face, the March 28 order authorizes further electroconvulsive therapies. Thus, Kinzer could again be subjected to electroconvulsive therapy pursuant to an order which he claims is invalid. Also, a court could issue a challenged order similar to the one issued here, the hospital could impose the treatment prior to the appeal being heard, and evade review by claiming mootness. In such a manner, medical authorities could obtain orders authorizing future treatment even though treatment is not presently necessary, and later administer the treatment without the safeguards of a *Price* hearing on the patients' current need for treatment.

We deny respondent's motion to dismiss.

## II.

*Venue*

■ The order from the bench that venue was proper is not an appealable order. *See* Minn.R.Civ.App.P. 103.03. However, it may be reviewed because it is an "order affecting the order from which an appeal is taken." Minn.R.Civ.App.P. 103.-04.

■ The trial court held that venue in Nicollet County, where the hospital is located, was proper. If the trial court erred as a matter of law, this court need not defer to the trial court's determination. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977) (citations omitted).

■ Ordinarily, "the state hospital must petition the probate division of the county court in the county in which the hospital is located." *Price v. Sheppard,* 307 Minn. at 262, 239 N.W.2d at 913. However, in a footnote the Supreme Court stated that it would be desirable to return to the committing court if it is reasonably convenient to the state hospital. *Id.* at 913 n. 10. Thus, *Price* permits venue in the committing court or in the county where the hospital is located.

■ Kinzer claims that his motion for a restraining order in Hennepin County "began" the action, and the *Price* hearing should have been held in the committing court pursuant to statute. *See* Minn.Stat. § 542.01 (1984).

Except as provided in section 542.02 [actions relating to land], every civil action shall be tried in the county in which it was begun, unless the place of trial be changed as hereinafter prescribed.

■ We conclude the petition for authorization to impose treatment was independent of the action in Hennepin County. The restraining order did not address which court would hear a petition for authorization to impose electroconvulsive therapy. It merely stated that "no Electro-Convulsive Therapy will be administered to Respondent unless either (a) he validly consents in writing or (b) a hearing is duly held and the treatment duly authorized pursuant to *Price v. Sheppard.*" Hennepin County did not reserve jurisdiction over the *Price* hearing. The Nicollet County court did not err in determining that venue was proper. We affirm its ruling.

■ Even if venue in Nicollet County was proper as a matter of law, the trial court may have erred in refusing appellant's request for a change of venue. We may reverse this ruling only if it is an abuse of discretion. *A. Gay Jensen Farms Co. v. Cargill, Inc.,* 309 N.W.2d 285 (Minn. 1981).

■ The trial court may order a change of venue "when the convenience of witnesses and the ends of justice may be served." Minn.Stat. § 542.11(4) (1984). The Min-

nesota Supreme Court commented on convenience in *Price:*

> It is recommended, for purposes of economy, that the necessity and reasonableness of more intrusive forms of treatment be considered at the commitment hearing. This would, of course, depend on a sufficiently extensive diagnosis and history of the patient's disorder, and should not become merely a matter of form. Also, *for economy, if the committing court is reasonably convenient to the state hospital, it would be desirable to return to it since it would be already familiar with the case, having previously appointed a guardian ad litem for the patient.*

239 N.W.2d at 913 n. 10 (emphasis added). The Supreme Court expressed its preference for venue in the committing court, although such venue is not mandatory.

In this case, neither the ends of justice nor the convenience of witnesses require venue at the committing court. Nor does the convenience of the witnesses require a change of venue. Here, the patient and one witness were located in Nicollet County, while both attorneys and one witness were located in the Twin Cities.

The trial court did not err when it refused to allow a change of venue.

### III.

*Validity of order*

The trial court issued its order, unlimited in duration, authorizing the future administration of electroconvulsive therapy whenever medical personnel determine that appellant is relapsing into catatonia.

The trial court found "at the present time patient is free from any symptoms of catatonia; however, further ECT will be necessary if the patient suffers a relapse." The trial court then authorized *future* treatment.

> In the event the patient, John Joseph Kinzer, appears to be exhibiting symptoms which would indicate he is relapsing into a catatonic condition, the medical authorities at the Minnesota Security Hospital are authorized to administer ECT treatments, not to exceed 30 in number.

Trial courts are responsible for evaluating requests for imposition of intrusive therapies upon unconsenting patients. The supreme court has established strict substantive and procedural requirements for these evaluations.

Because the potential impact of the more intrusive forms of treatment is so great, *we are reluctant* in those cases where the patient or guardian refuse their consent, *to leave the imposition of the more intrusive forms of treatment solely within the discretion of medical personnel at our state hospitals.* For that reason, we adopt the following procedure for future cases:

(1) If the patient is incompetent to give consent or refuses consent or his guardian other than persons responsible for his commitment also refuses his consent, before more intrusive forms of treatment may be utilized, the medical director of the state hospital must petition the probate division of the county court in the county in which the hospital is located for an order authorizing the prescribed treatment;

(2) the court shall appoint a guardian ad litem to represent the interests of the patient;

(3) in an adversary proceeding, pursuant to the petition, the court shall determine the necessity and reasonableness of the prescribed treatment.

In making that determination the court should balance the patient's need for treatment against the intrusiveness of the prescribed treatment. Factors which should be considered are (1) the extent and duration of changes in behavior patterns and mental activity effected by the treatment, (2) the risks of adverse side effects, (3) the experimental nature of the treatment, (4) its acceptance by the medical community of this state, (5) the extent of intrusion into the patient's body and the pain connected with the treatment, and (6) the patient's ability to

competently determine for himself whether the treatment is desirable.

*Price v. Sheppard*, 307 Minn. 250, 262–63, 239 N.W.2d 905, 912–13 (1976) (emphasis added) (footnotes omitted).

█ All parties to this action agree, and the supreme court has held, that electroconvulsive therapy is "intrusive treatment". *Price*, 307 Minn. at 263, 239 N.W.2d at 913.

█ No subsequent Minnesota cases interpret *Price*'s procedural requirements. The Minnesota Supreme Court adopted these requirements in order to ensure patients' constitutional rights of privacy. *Price*, 307 Minn. at 257–58, 239 N.W.2d at 911. As the potential impact of governmental intrusion increases, so must the importance of the state's interest justifying the intrusion. *Id.* The impact of electroconvulsive therapy is "unquestionably great, for the result is the alteration of the patient's personality." *Id.* Orders authorizing intrusive treatments must be carefully limited to ensure that the treatment does not invade the patient's constitutional right of privacy. For the reasons stated below, we hold that the trial court did not comply with the requirements of *Price*.

█ A. *Lack of time limits.* The March 28, 1985, order authorizes electroconvulsive therapy treatments for an unlimited duration. *Price* does not explicitly require time limits in authorization orders. However, the supreme court intended to remove the sole discretion of medical personnel to impose intrusive treatments. *Price*, 307 Minn. at 262, 239 N.W.2d at 913. Time-limited authorization orders are consistent with this rationale and are needed to reduce the risk of unwarranted invasion of the patient's right of privacy. We hold the authorization orders must contain reasonable time limits.

MSH argues that the March 28, 1985, order is limited and authorizes only one series of electroconvulsive therapies.[2] While MSH may interpret the order as limited in time, by its terms the order is not so limited.

B. *Medical necessity.* The trial court did not find that electroconvulsive therapy was necessary to treat Kinzer. It found that "further ECT will be necessary if the patient suffers a relapse."

█ The court may authorize treatment if the treatment is necessary. *Price*, 307 Minn. at 262, 239 N.W.2d at 913. The trial court's speculation concerning future necessity in the event of a relapse did not fulfill this requirement.

█ The trial court must find intrusive treatments are *presently* medically necessary. The purpose of the *Price* hearing is to inquire into the present need for intrusive treatment. The purpose is not to contemplate future needs for treatment.[3] *Price* requires a hearing, with medical evidence, before each series of electroshock therapy treatments.

█ Orders authorizing future treatment without present medical necessity contradict *Price* by improperly delegating to hospitals and medical personnel the authority to evaluate the need for treatment. Such orders allow imposition of intrusive therapy without notice to the patient or the patient's attorney. Such orders foreclose counsel from contesting the need for intrusive therapy before the hospital imposes it.

MSH argues that the trial court's order did limit the hospital's discretion to impose electroconvulsive therapy on Kinzer. No more than 30 individual treatments may be given over a course of treatment, and Kinzer must relapse into catatonia before electroconvulsive therapy may be imposed.

---

**2.** An affidavit of the medical director of MSH accompanying the motion to dismiss for mootness states that "if further need for ECT should be indicated, I plan to return to court for further authorization of treatment." This affidavit was not part of the record before the trial court.

Minn.R.Civ.App.P. 110.11. We quote it only for its assistance in understanding MSH's position.

**3.** In the event of life-threatening emergencies, hospitals must look to Minn.Stat. § 253B.03, subd. 6 (1984) for guidance. Such circumstances, however, are not present in this case.

This argument does not address the *Price* requirement that the necessity for electroconvulsive therapy treatment be determined at an adversary hearing, not unilaterally by a hospital.

We reverse the trial court's authorization order.

## IV.

■ Appellant also appeals the trial court's failure to address his request to dismiss for lack of service. We note that counsel and his client were served with notice before the March 25th hearing, and conclude that this claim is without merit.

## DECISION

1. This case will be reviewed against a claim of mootness, because it raises issues capable of repetition, yet evading review.

2. *Price* hearings may be venued in the county where the hospital is located.

3. The trial court erred in issuing an order, unlimited in duration, authorizing future administration of electroconvulsive therapy when the medical authorities determine that the appellant is relapsing. The trial court did not comply with the requirements of *Price v. Sheppard.*

Affirmed in part, reversed in part, motion to dismiss denied.