**Matter of Gabriel RICE.**

**No. C9–87–1056.**

Court of Appeals of Minnesota.

Aug. 25, 1987.
Review Denied Oct. 28, 1987.

William L. Lubov, Lubov and Foster, Minneapolis, for appellant Rice.

Thomas L. Johnson, Hennepin Co. Atty., Douglas J. McClellan, Asst. Co. Atty., Minneapolis, for respondent Hennepin County.

Heard, considered and decided by HUSPENI, P.J., NORTON and MULALLY, JJ.*

## OPINION

HUSPENI, Judge.

Rice appeals from an April 29 order directing his release to a custodian prior to commitment and establishing the conditions of custodial care. We affirm.

## FACTS

Appellant Gabriel Rice has been admitted to the Hennepin County Alcohol Receiving Center ("detox") 446 times in just over a decade. He has been referred to numerous treatment programs and hospitalized repeatedly without success. He has frequently absconded from such programs

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

and refuses all treatment efforts. Rice suffers from liver and cardiac problems caused or exacerbated by his excessive consumption of alcohol and Lysol. Police have frequently discovered him unconscious in public during cold weather, sometimes with injuries requiring medical attention. His blood alcohol content was tested at .46 during one admission in early 1987.

A petition for commitment as a chemically dependent person was prepared by Jane Tapper, lead counselor for chronic case management at Hennepin County Alcohol Receiving Center, and filed with the trial court on April 9, 1987. The petition was accompanied by a statement indicating Rice had twice refused to cooperate with an examination and interview regarding the petition. Physician Susan Ravenscraft submitted a statement in support of the petition which noted her conclusions were based upon review of Rice's medical records. The statement documented Rice's repeated admissions and physical problems.

Rice failed to appear for the court-ordered examination prior to a hearing on the petition and was later apprehended. Licensed consulting psychologist James Jacobson then examined available medical records and the proposed patient on April 22, 1987. Jacobson concluded Rice was chemically dependent and, as a result, unable to manage himself and his affairs. Dr. Jacobson warned that Rice's chemical abuse, physical problems, and repeated admissions after being discovered unconscious demonstrated "a lethal pattern."

The commitment hearing was held on April 27 and 29. Dr. Ravenscraft testified that Rice had refused to be examined, and she therefore based her statement in support of the petition on his medical records. Although Ravenscraft testified she would have preferred to give Rice a physical examination, she explained she could not force him to cooperate. She also testified Rice had replied with an expletive when she asked him to submit to an examination.

Dr. Jacobson described the basis for his conclusion that Rice is a chemically dependent person in need of long-term inpatient treatment. In light of Rice's adamant rejection of all treatment efforts, Jacobson believed that even court-ordered commitment would be unsuccessful in treating his chemical dependency.

Jane Tapper summarized Rice's recent admissions, physical condition, and known abuse of alcohol and Lysol. She knew of no permanent address or employment and testified that Rice cannot care for his own needs and is dangerous to himself. Tapper explained the efforts made to have Rice examined before the petition was filed and his refusal to cooperate with those efforts.

John Agrimson, a head nurse at Hennepin County Alcohol Receiving Center, testified he was aware that others had already tried to elicit Rice's cooperation in seeing Dr. Ravenscraft before he asked Rice two or three times on April 9 to submit to an examination. Agrimson's efforts were also unsuccessful.

Gabriel Rice told the court he was unwilling to participate in any treatment program and would not stay at any treatment facility, even if ordered to by the court.

Rice's counsel claimed Dr. Ravenscraft had made insufficient efforts to examine Rice before the petition was filed and argued the petition should therefore "fail on its face." Counsel agreed that placement in a treatment facility was not likely to succeed. The county attorney, on behalf of the petitioner, argued Dr. Ravenscraft tried to elicit Rice's cooperation, was unsuccessful, and then based her statement in support of the petition on review of available medical records.

The trial court noted there was no question that Rice was a chemically dependent person as defined by statute. The court ruled that Dr. Ravenscraft's statement in support of the petition was sufficient in light of Rice's 446 admissions and his clear communications "that he wasn't going to submit to any kind of examination."

The trial court recognized that Rice was "badly in need of some kind of treatment," but that he would not cooperate with any such efforts. The trial court continued the hearing to consider other options, including releasing Rice to a custodian. On April 29

the hearing was reconvened on the sole issue of the propriety of requiring "custodial care" short of commitment to a treatment facility.

Counsel were both questioned on their views of the legality of the proposal and authority of the court to order it. Rice's counsel agreed that appointment of a custodian to manage Rice's affairs was authorized by the commitment act, but questioned whether a formal guardianship proceeding might be more appropriate.

By order on April 29, the trial court found Rice was a chemically dependent person not amenable to treatment. The court directed that Rice be released to Dean Lattin, principal counselor in the Hennepin County Community Services Department, Chemical Health Division. Lattin was directed to receive and manage Rice's funds and provide a suitable residence, food, clothing, and spending money to Rice. Lattin is required to report on Rice's finances, health, and activities every six months. Hennepin County was ordered to pay all food stamps and funds intended for Rice to Lattin.

Rice appeals, arguing Dr. Ravenscraft's statement was insufficient and that the trial court lacked authority to appoint a custodian once it was determined Rice was not amenable to treatment or to transfer control over his public entitlements without formal guardianship proceedings.

### ISSUES

1. Was the examiner's statement in support of the commitment petition sufficient?

2. Was the trial court authorized to order Rice's release to a custodian to manage his finances and provide for his basic needs?

### ANALYSIS

#### I.

■ A petition for commitment must be supported by the written statement of a preliminary examiner who recently has examined the proposed patient and who has concluded the proposed patient is mentally ill, mentally retarded, or chemically dependent "and should be committed to a treatment facility." Minn.Stat. § 253B.07, subd. 2 (1986). "If a petitioner has been unable to secure a statement from an examiner, the petition shall include documentation that a reasonable effort has been made to secure the supporting statement." *Id.*

Rice's repeated refusals to cooperate prevented Dr. Ravenscraft from performing an examination. In lieu of a statement based on an examination, she submitted a statement based on her review of medical records. This statement was supplemented by written documentation of Rice's refusals.

■ As we have noted previously, a proposed patient's refusal to submit to an interview or examination does not render a petition invalid where the patient's lack of cooperation is documented. *In Re Cordie,* 372 N.W.2d 24, 29 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Sept. 26, 1985). It would be incongruous for us to permit a proposed patient to defeat all commitment proceedings merely by refusing to be examined. We conclude that Dr. Ravenscraft's statement in support of the petition was sufficient to meet the requirements of section 253B.07, subd. 2.

#### II.

Rice next argues that the court should not have directed release before commitment but should have simply dismissed the petition once it was established that treatment efforts would be unsuccessful. We cannot agree.

■ The focus of the commitment act is to impose involuntary treatment, in the least restrictive available setting, upon individuals only if there is no less restrictive alternative disposition which is reasonable. *See* Minn.Stat. § 253B.09, subd. 1. Those committed against their will are entitled to substantial procedural safeguards throughout the proceedings and to proper care and treatment directed toward "rendering further custody, institutionalization, or other services unnecessary" once they have been committed. Minn.Stat. § 253B.03, subd. 7.

This case presents the clear conflict between the state's interest in treating chemically dependent persons and the reality that a court order cannot guarantee the success of treatment efforts.

The legislature recognized that commitment, even if authorized by statute, may be inappropriate in some cases. The statute emphasizes the "careful consideration" of alternative dispositions short of commitment. *See* Minn.Stat. § 253B.09, subds. 1 and 4. We commend the trial court for recognizing that involuntary commitment of Rice was likely to be futile. At the same time, the state and the courts cannot be expected to ignore citizens who are ill and dangerous to themselves. *See O'Connor v. Donaldson*, 422 U.S. 563, 575, 95 S.Ct. 2486, 2493, 45 L.Ed.2d 396 (1975) (critical issue is whether proposed patient can live safely in freedom without court intervention).

The commitment act authorizes trial courts to release patients prior to commitment. Minn.Stat. § 253B.09, subd. 4 reads in relevant part:

**Subd. 4. Release before commitment.** After the hearing and before a commitment order has been issued, the court may release a proposed patient to the custody of any individual or agency upon conditions which guarantee the care and treatment of the patient. * * *

The court, on its own motion or upon the petition of any person, and after notice and a hearing, may revoke any release and commit the proposed patient pursuant to this chapter.

Minn.Stat. § 253B.09, subd. 4.

■ The emphasis in the statute is upon care and treatment of the individual. We note with some concern that, notwithstanding this statutory emphasis, the trial court did not direct that Rice be treated while in Lattin's custody. Instead, the custodian is directed primarily to provide for Rice's care and is required to provide treatment for Rice only if he requests it. However, we are mindful that courts must balance the state's interest in treating and preventing harm to (and by) mentally ill, mentally retarded, and chemically dependent persons against a patient's qualified right to refuse treatment.

■ We have repeatedly criticized committing courts which issue blanket authorizations for involuntary treatment. *See, e.g., In Re Kinzer*, 375 N.W.2d 526 (Minn.Ct.App.1985). The circumstances under which treatment, as distinguished from commitment, can be imposed against a patient's will are limited. *See Price v. Sheppard*, 307 Minn. 250, 239 N.W.2d 905 (1976); *see also Jarvis v. Levine*, 403 N.W.2d 298 (Minn.Ct.App.1987), *pet. for rev. granted* (Minn. July 2, 1987). Although the statute refers to the care *and treatment* of the individual, it does not abrogate the patient's right to have some control over treatment, even though the patient cannot unilaterally prevent commitment.

■ Here the trial court chose to invoke the provisions of Minn.Stat. § 253B.09, subd. 4. Rice complains that the conditions of the release order and the authority granted to the custodian create, in effect, a guardianship relationship without affording to Rice the protection of formal guardianship proceedings. Again, we cannot agree. The trial court made specific provisions for the custodian to provide Rice with the necessities of life; it made no determination of Rice's competency. *See* Minn. Stat. § 253B.23, subd. 2(a) (commitment or treatment not a judicial determination of legal incompetency); *Cf. Knox v. Haug*, 48 Minn. 58, 50 N.W. 934 (1892) (findings in commitment proceedings of no effect when determining competency in separate proceedings).

■ Further, a review of other provisions of section 253B.09 indicates that the legislature anticipated that the trial court could exercise its discretion in choosing from a wide range of alternatives in situations such as this.

Section 253B.09, subd. 1 provides in relevant part:

If the court finds by clear and convincing evidence that the proposed patient is a * * * chemically dependent person and, that after careful consideration of rea-

sonable alternative dispositions, including but not limited to, dismissal of petition, voluntary outpatient care, informal admission to a treatment facility, appointment of a guardian or conservator, or release before commitment as provided for in subdivision 4, it finds that there is no suitable alternative to judicial commitment, the court shall commit the patient to the least restrictive treatment facility which can meet the patient's treatment needs consistent with section 253B.02, subdivision 7.

Under the terms of this statute, the appointment of a guardian or conservator and release before commitment are equally available alternatives.

Finally, we note that although section 253B.09, subd. 4 provides for notice and a hearing before the release may be revoked and commitment ordered, it does not impose a limit on the length of time a proposed patient may be released to the custody of another. As a leading commentator on the subject has noted, release prior to commitment can be a valuable, less restrictive alternative to obtain treatment. "This technique should, however, be used with caution, because it allows the commitment petition to remain pending for an indefinite period of time." E. Janus, *Civil Commitment in Minnesota*, 104–2 (1986).

The trial court in this case wisely ordered the custodian to file reports with the court every six months and set a return date, one year after the initial order, for further consideration of the matter. The court further provided that a hearing could be held earlier if the proposed patient, the petitioner, or the custodian established "reasonable grounds" for continuing, amending, dismissing, or modifying the release order. If the period of custodial release had not been so limited and the proposed patient's right to judicial review had not been carefully protected, Rice's argument that the trial court's order closely resembled the establishment of a guardianship without appropriate safeguards would have been more persuasive to this court.

■ Rice did not object to custodial release at trial nor to the custodian appointed by the court. He has identified no right which is abridged by the conditions imposed. He has not petitioned the trial court to modify the order. We conclude the trial court was authorized to order Rice's release to a custodian and to establish conditions to insure his proper care and treatment.

## DECISION

The trial court did not err in ruling the examiner's statement was sufficient or in releasing Rice prior to commitment subject to conditions designed to afford proper care and treatment.

Affirmed.