**In re the Matter of Robin Sherwood LAMBERT.**

**No. C3-88-2455.**

Court of Appeals of Minnesota.

March 21, 1989.
Review Denied May 12, 1989.

William L. Lubov, Minneapolis, for appellant Lambert.

Hubert H. Humphrey, III, Atty. Gen., Kathy Meade Hebert, Sp. Asst. Atty. Gen., St. Paul, for respondent Minn. Sec. Hosp.

Roderick N. Hale, Leatham & Hale, Minneapolis, for guardian ad litem.

Heard, considered and decided by WOZNIAK, C.J., and LANSING and IRVINE *, JJ.

## OPINION

LANSING, Judge.

Appellant Robin Lambert, a patient at the Minnesota Security Hospital, challenges a district court order authorizing the hospital to treat him with neuroleptic medications. Lambert claims the court erred by finding him incompetent and by

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

failing to impose necessary limits on types and levels of authorized neuroleptic drugs. Lambert also claims the court erred by authorizing the hospital to administer neuroleptic medication for a one-year period. We affirm.

## FACTS

In 1983, Lambert was committed to the Minnesota Security Hospital (MSH) at St. Peter, Minnesota, as mentally ill and dangerous. Lambert's current diagnosis is schizophrenia, catatonic type. He has been treated with fluphenazine, a neuroleptic medication. At Lambert's request, his neuroleptic medications were temporarily discontinued in August 1987 and March 1988. Both times, Lambert suffered relapses within a month, and his treating physician at MSH, Dr. Charles VanValkenburg, resumed administration of the drugs. In April 1988, after the second incident, Dr. VanValkenburg treated him with 40 milligrams per day of fluphenazine (Prolixin), and Lambert responded rapidly. Over several months Dr. VanValkenburg reduced the dose to five milligrams per day.

On April 21, 1988, the medical director at MSH petitioned the Hennepin County Court for authorization to involuntarily treat Lambert with neuroleptic medications. The petition alleged that Lambert was not competent to make a decision on his treatment and was currently refusing neuroleptic medications.

A hearing was held on the petition on July 29, 1988. Dr. VanValkenburg testified in support of the petition, requesting authority to administer up to 100 milligrams per day of fluphenazine. Dr. VanValkenburg explained that he would probably continue Lambert on five milligrams per day, but requested the authority to give up to 100 milligrams per day, should Lambert become catatonic. Dr. VanValkenburg indicated, however, that to his knowledge Lambert had never received more than 40 milligrams per day of fluphenazine or an equivalent amount of an alternative neuroleptic medication. Dr. VanValkenburg also testified that he might eventually want to put Lambert on a different, longer-acting neuroleptic drug.

Dr. VanValkenburg testified that he had discussed with Lambert the risks and benefits of treatment with neuroleptic medication. According to Dr. VanValkenburg, Lambert is aware of the side effects of the medications, but does not believe the drugs have improved his condition, since he does not believe he is mentally ill. Dr. VanValkenburg stated that Lambert does not have the capacity to rationally weigh the risks and benefits and determine for himself whether treatment with neuroleptic medication is necessary or reasonable.

Following the hearing, the court issued an order finding that Lambert is not competent to give or withhold his consent for treatment with neuroleptic medications. The court's order authorized the Minnesota Security Hospital to administer neuroleptic medications to Lambert for one year, contingent upon approval by a treatment review panel before January 29, 1989. The court in its findings discussed the drug fluphenazine in some detail, and addressed Dr. VanValkenburg's testimony on Lambert's current treatment regime and the hospital's request for authority to administer up to 100 milligrams of fluphenazine per day or an alternative neuroleptic medication in an equivalent dose.

## ISSUES

1. Did the trial court err by determining that Lambert is not competent to give or withhold his consent to treatment with neuroleptic medications?

2. Did the trial court err by authorizing involuntary treatment with neuroleptic medications without ordering that this authorization be limited to specifically named drugs or dosages?

3. Did the trial court err by authorizing treatment with neuroleptics for a one-year period?

## ANALYSIS

### I.

In *Jarvis v. Levine*, 418 N.W.2d 139 (Minn.1988), the Minnesota Supreme Court

determined that certain procedures must be followed before neuroleptic medications may be administered to nonconsenting patients. A prerequisite to these procedures is a determination that

the patient is incompetent to give consent or refuses consent or his guardian other than persons responsible for his commitment also refuses his consent * * *.

*Id.* at 144 (citing *Price v. Sheppard,* 307 Minn. 250, 262, 239 N.W.2d 905, 913 (1976)). The *Jarvis* court stated that "a finding of legal incompetence is a prerequisite to involuntary medication with neuroleptics." *Jarvis,* 418 N.W.2d at 148 n. 7.

Although not defining "incompetence" for purposes of these proceedings, the *Jarvis* court referred to Beck, *Right to Refuse Antipsychotic Medication: Psychiatric Assessment and Legal Decision–Making,* 11 Mental and Physical Disability Law Rptr. 368 (1987). According to Beck, a clinical definition of "competency" includes: (1) an awareness of having a mental disorder; (2) sufficient knowledge about medication and the mental disorder; and (3) a refusal which is not based upon delusional beliefs. Beck states that a necessary condition for a competent refusal of neuroleptic medications is the ability to repeat the psychiatrist's view of the facts; in other words, awareness of, not agreement with, the proposed treatment, the expected benefits and possible risks of the treatment. *Id.* at 369–70.

The trial court found that Lambert does not acknowledge his mental illness; denies his prior symptoms and does not believe they have been relieved by neuroleptic medication in the past; and does not have the ability to understand and use information about his mental illness, its symptoms, and treatment. These findings are supported by Dr. VanValkenburg's testimony, and are sufficient to sustain the court's determination that Lambert is not competent to give or withhold consent for treatment with neuroleptic medication.

Although we affirm the trial court's determination on the issue of competency, we caution, as the Beck article instructs, that competency is not always manifested by a patient's agreement with a proposed treatment method. Hospitals and courts must be careful not to confuse disagreement with incompetence.

## II.

The trial court found that Lambert has a need for neuroleptic medications, and authorized their administration without specifically ordering limitations upon specific types or dosages. Lambert argues the court erred by authorizing unlimited dosages of unnamed medications, claiming there is no present medical necessity for a large amount of the medication.

*In re Kinzer,* 375 N.W.2d 526 (Minn.Ct. App.1985), cited by Lambert, is distinguishable on its facts. We held in *Kinzer* that an order which authorized future unlimited administration of electroconvulsive therapy (ECT), if the patient suffered a relapse, was improper where the ECT was not presently necessary to treat the patient. In *Kinzer,* however, there was no present necessity for any ECT whatsoever. Here, on the other hand, the undisputed testimony indicated that Lambert has a present need for neuroleptic medications.

*In re Steen,* 437 N.W.2d 101 (Minn.Ct. App.1989), being released simultaneously with this case, addressed the issue of specificity for orders authorizing the involuntary administration of neuroleptic medication. In *Steen* we expressed our interpretation of *Jarvis* that courts ordering neuroleptic medications should outline in each order a course of treatment tailored to the individual circumstances of that case.

Here, we believe the court's order, taken as a whole, adequately outlined a course of treatment for the involuntary administration of the neuroleptic medication. Although the operational portion of the order does not indicate types or levels of drugs, the order is premised on specific findings which must be read into the approval for the proposed procedure. Incorporating the predicate findings, we interpret the order to authorize treatment of Lambert with neuroleptic medication by administering 5 milligrams of fluphenazine or an alternative neuroleptic medication in an equivalent

dose. The alternative medication may be used if Lambert develops intolerable side effects from fluphenazine or could be treated with a lower dose of the alternate drug. The higher dose of 100 milligrams of fluphenazine may be administered if Lambert's catatonic symptoms recur and cannot be controlled with the 40 milligram dose which has been effective in the past.

Although the court's order may be unnecessarily inclusive by attempting to provide authorization for emergency situations which are exempted from the *Jarvis* procedure, the specificity is sufficient to satisfy our interpretation of *Jarvis*. We note, however, that failing to specify the prescribed neuroleptic medications and dosages in the operational part of the order may lead to unnecessary confusion in the hospital's administration of the medication.

The state on appeal asserts that orders specifying a course of treatment are unworkable because the number of court hearings would be increased, requiring physicians to spend more time in court and disrupting patient care. As stated in *Steen*, we believe a court's order authorizing involuntary administration of neuroleptic medication should be reasonably flexible.[1] However, we are unpersuaded that open-ended orders are the only alternative. As the court stated in *Jarvis*, the nature of the intrusion warrants any additional burden placed on the state by application of the *Price* procedures.[2] *Jarvis*, 418 N.W.2d at 149.

### III.

■ Lambert also challenges the court's decision to allow the hospital to pursue a course of treatment with neuroleptics for an entire year. We reiterate our holding in *Steen* that each order in these matters must depend on the individual circumstances of each case. Although a one-year period may be inappropriate or unsupported in other cases, we conclude in this case that Lambert's lengthy history of treatment with neuroleptics supports the court's authorization of a one-year period of treatment.

### DECISION

The trial court properly determined that Lambert is incompetent to make a decision accepting or rejecting treatment with neuroleptic drugs. The court's order, taken as a whole, sufficiently outlines a necessary course of treatment with neuroleptic drugs. The court's decision to authorize treatment with neuroleptic medications for a one-year period is supported by the record.

AFFIRMED.

---

1. For example, when an order authorizing neuroleptic medications is entered after an initial commitment hearing, greater flexibility will undoubtedly be required in the range of types and doses; however, we would anticipate less flexibility in the initial duration authorized. *Steen*, at 105 n. 2.

2. We find equally unpersuasive the trial court's belief that it would involve too much trouble to require notification of a patient's attorney before a prescription is changed. *Jarvis* specifically states:

   After commitment, the patient's attorney should be kept informed at all times of any proposed changes in treatment.

   *Jarvis*, 418 N.W.2d at 149.