## In the Matter of Andrew D. McGAUGHEY.

### No. C6–94–952.

Supreme Court of Minnesota.

Sept. 1, 1995.

Kurt M. Anderson, Minneapolis, for appellant.

Michael O. Freeman, Hennepin County Atty., Gayle C. Hendley–Zappia, Asst. County Atty., Minneapolis, for respondent.

## OPINION

ANDERSON, Justice.

This appeal is from a decision of the Minnesota Court of Appeals in which that court affirmed the trial court's civil commitment of Andrew D. McGaughey as a mentally ill person. McGaughey argues that the record does not support by clear and convincing evidence the trial court's finding that McGaughey poses a threat of physical harm either to himself or to others and that dual commitment to the Hennepin County Medical Center and the Anoka Metro Regional Treatment Center was not the least restrictive alternative available. We reverse.

Appellant, Andrew McGaughey, is a 53–year–old man who has been diagnosed as suffering from chronic schizophrenia. In the summer of 1993, McGaughey moved from Washington, D.C. to Minneapolis to live with his brother. Within three to four days of moving to Minneapolis, McGaughey was hospitalized for an asthma attack. After a short stay in the hospital, he returned to his brother's home, but he was immediately rehospitalized after another asthma attack. During this second hospitalization, McGaughey had an appendectomy. As a complication of the surgery, he developed urinary problems and has become intermittently incontinent.

On July 10, 1993, McGaughey was discharged from the hospital to Queen Care Center, a nursing home. While at Queen, McGaughey was treated with medication for his schizophrenia, although he continued to exhibit symptoms of his mental illness. Employees at Queen reported that McGaughey engaged in some inappropriate behavior, including staring at and sometimes following female employees and making inappropriate sexual comments. During his stay at Queen, McGaughey required several short-term voluntary in-patient hospitalizations at the Fairview–Riverside Medical Center ("FRMC").

During his hospitalizations at FRMC, McGaughey continued to engage in some inappropriate behavior. In one incident, McGaughey allegedly squeezed or rubbed his genitals through his clothing while standing over a seated female patient who was using the telephone. In another incident, McGaughey, while sitting down, laid his head against the chest of a female patient who was standing next to him. On several occasions, McGaughey consensually held hands with female patients, in violation of FRMC rules. McGaughey also made repeated, nonthreatening phone calls to public figures and businesses, either seeking employment or voicing large-scale, grandiose business plans. Finally, McGaughey continued to be intermittently incontinent and often needed "redirection" to shower or to attire himself in clean clothing.

On March 14, 1994, McGaughey was again hospitalized at FRMC. Subsequently, FRMC determined that its acute-care facility was not the best environment in which to treat McGaughey's mental illness. The FRMC staff persons responsible for McGaughey's treatment recommended that he be civilly committed. On March 30, 1994, the FRMC administrator filed a petition for judicial commitment in Hennepin County District Court. A commitment hearing was held on April 18, 1994. On April 20, 1994, the trial court filed its order dually committing McGaughey as "mentally ill" to the Hennepin County Medical Center and the Anoka Regional Treatment Center. On October 4, 1994, in an unpublished decision, the Minnesota Court of Appeals affirmed the trial court's commitment order. *In re McGaughey*, C6–94–952, 1994 WL 534849 (Minn.App., Oct. 4, 1994).

### I.

■ We will not set aside the trial court's findings unless they are clearly erroneous. *See* Minn.R.Civ.P. 52.01. To civilly commit a person as mentally ill, the trial court must find by clear and convincing evidence that the person is "mentally ill," as defined by the Minnesota Civil Commitment Act ("Commitment Act"). Minn.Stat. §§ 253B.02, subd. 13 & 253B.09, subd. 1 (1994). The Commitment Act defines a mentally ill person as:

[A]ny person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which

(a) is manifested by instances of grossly disturbed behavior or faulty perceptions; and

(b) poses a substantial likelihood of physical harm to self or others as demonstrated by:

(i) a failure to obtain necessary food, clothing, shelter, or medical care as a result of the impairment, or

(ii) a recent attempt or threat to physically harm self or others. This impairment excludes (a) epilepsy, (b) mental retardation, (c) brief periods of intoxication caused by alcohol or drugs, or (d) dependence upon or addiction to any alcohol or drugs.

Minn.Stat. § 253B.02, subd. 13 (1994).

■ The statute clearly requires that the substantial likelihood of physical harm must be *demonstrated* by an overt failure to obtain necessary food, clothing, shelter, or medical care or by a recent attempt or threat to harm self or others. Minn.Stat. § 253B.02, subd. 13(b)(i) & (ii); *see Enberg v. Bonde*, 331 N.W.2d 731, 736–38 (Minn.1983) (recognizing that civil commitment of mentally ill persons requires a recent overt act, attempt or threat of harm to self or to others). Therefore, speculation as to whether the person may, in the future, fail to obtain necessary food, clothing, shelter, or medical care or may attempt or threaten to harm self or others is not sufficient to justify civil commitment as a mentally ill person. This is not to say, however, that the person must either come to harm or harm others before commitment as a mentally ill person is justified. The statute requires only that a substantial likelihood of physical harm exists, as demonstrated by an overt failure to obtain necessary food, clothing, shelter, or medical care or by a recent attempt or threat to

harm self or others.[1]

In its April 20, 1994 commitment order, the trial court concluded that McGaughey is a mentally ill person, as defined by section 253B.02, subdivision 13. The court first found that McGaughey has schizophrenia, a substantial psychiatric disorder. McGaughey does not challenge this conclusion. The court next found that McGaughey poses a substantial likelihood of causing physical harm, "as demonstrated by his recent readmission to FRMC." McGaughey does challenge this conclusion. The court noted that "[a]t Queen [McGaughey] had become labile, was following the nurses, and became extremely inappropriate with sexual comments and behaviors." The court also noted that, while at FRMC, McGaughey "inappropriately touched females, stared at females to the point of making them uncomfortable, and engaged in one incident of masturbation near the head of a female patient who was using the telephone." Finally, the court noted that McGaughey needed assistance with his daily living needs, especially with respect to bathing and to attiring himself in clean clothing.

We conclude that the trial court's findings are insufficient to support the conclusion that McGaughey is a mentally ill person, as defined by the Commitment Act. The record does not show by clear and convincing evidence that McGaughey poses a substantial likelihood of physical harm to himself or to others.

First, none of the witnesses who testified at McGaughey's commitment hearing indicated that McGaughey has at any time failed to obtain necessary food, clothing, shelter, or medical care. McGaughey's case manager at FRMC, Jenny Just, testified that McGaughey had difficulty maintaining hygiene as a result of his intermittent incontinence. Just also speculated as to what McGaughey would do if he were released into the community. She opined that McGaughey would probably provide food and shelter for himself. She did not believe, however, that he would seek medical assistance for mental health issues. Just was also concerned that McGaughey

may forget to take his medications on his own, although she acknowledged that, while at FRMC, McGaughey was very compliant with his medications. Just admitted that she had no reason to believe that McGaughey would refuse to take his medications outside of a hospital environment. Nothing in Just's testimony indicates that McGaughey has demonstrated a substantial likelihood of harm to himself by failing to obtain food, clothing, shelter, or medical care. Aside from her testimony about McGaughey's hygiene problems, Just's testimony was entirely based on unsupported speculation. Moreover, McGaughey's intermittent hygiene problems simply do not amount to a substantial likelihood of physical harm to himself.

Second, none of the witnesses who testified at McGaughey's commitment hearing indicated that McGaughey had made any recent attempt or threat to physically harm himself or others. Although McGaughey engaged in some inappropriate sexual behavior at Queen and at FRMC, the behavior was not assaultive and primarily involved staring at and sometimes following female employees and patients and making inappropriate sexual comments. The only incident reported in the record in which McGaughey touched another person involved McGaughey briefly laying his head against the chest of a female patient. Jenny Just testified that McGaughey does not have a history of any type of assaultive behavior, and both Just and McGaughey's court-appointed examiner, Dr. Vraa, opined that McGaughey does not pose a danger either to himself or to the community.

We conclude that McGaughey does not meet the statutory definition of a mentally ill person because the record does not show by clear and convincing evidence that McGaughey poses a substantial likelihood of physical harm to himself or to others. We therefore reverse his civil commitment as a mentally ill person and order that he be fully discharged.

Because we conclude that the trial court erred in committing McGaughey as a mental-

1. For example, in applying the commitment statute, the Minnesota Court of Appeals has followed this approach. *See In re Terra,* 412 N.W.2d 325 (Minn.App.1987); *In re Burmeister,* 391 N.W.2d 89 (Minn.App.1986).

ly ill person, we give no opinion as to whether McGaughey's dual commitment to the Hennepin County Medical Center and the Anoka Regional Treatment Center was the least restrictive alternative available.

Reversed.