In the Matter of the CIVIL COM-
MITMENT OF Richard Ar-
thur WILLIAMS.

No. A07–185.

Court of Appeals of Minnesota.

July 24, 2007.

Brian C. Southwell, Minneapolis, MN, for appellant.

Robert M.A. Johnson, Anoka County Attorney, Janice M. Allen, Assistant County Attorney, Anoka, MN, for respondent.

Considered and decided by
PETERSON, Presiding Judge;
SHUMAKER, Judge; and ROSS, Judge.

## OPINION

ROSS, Judge.

Richard Williams appeals from an order for indeterminate commitment as a sexually dangerous person and sexual psychopathic personality. Williams argues that the district court erred by admitting evidence based on rule 15 of the Commitment and Treatment Act Rules rather than applying the Minnesota Rules of Evidence, that application of rule 15 violated his due process rights, that clear and convincing evidence does not support one of the district court's factual findings, and that the court erred by appointing a third examiner. The district court correctly relied on Minnesota Statutes section 253B.08, subdivision 7, which directs the court to admit "all relevant evidence" in a civil-commitment proceeding. The record supports the court's findings, and the court did not abuse its discretion by appointing a third examiner. We affirm.

## FACTS

Anoka County filed a petition in November 2002 to commit Richard Williams as a sexually dangerous person and sexual psychopathic personality. The county based its petition on Williams's 10–year history of sexual offenses against women.

The record of Williams's sexual offenses begins in 1979, three years after he was first convicted of burglary. In October 1979, a woman who did not know Williams awakened to find him in her apartment and squeezing the back of her neck. He put his hand over her mouth and indicated that he planned to sexually assault her. When she screamed, Williams wrapped a blanket around her head, threatened to kill her, and then left. Williams pleaded guilty to first-degree burglary and was imprisoned. But 11 days after he was released in March 1982, he was found peeping through the window of another woman.

In April 1984, Williams entered a different woman's apartment while she slept on her couch. The woman awoke and found Williams standing over her. He brandished a knife and warned her to be quiet. But the woman screamed, and Williams ran from the apartment. The victim then discovered that her jeans had been cut

from alongside the zipper up to her waist and that her shirt had also been cut open from its bottom to its collar. Police found semen in the woman's hair and on the pillow she had been lying on. She concluded that Williams had ejaculated on her before she awoke. Williams pleaded guilty to first-degree burglary. He acknowledged that he entered the woman's apartment but asserted that he intended only to steal her stereo or television. The court sentenced Williams to 49 months' imprisonment.

In July 1989, Williams entered another woman's home. The woman awoke to find Williams shining a flashlight in her face. He tied her arms behind her back using her bra, ordered her to roll over, removed her underpants, and placed a pillowcase over her head. Williams threatened to harm her if she did not cooperate. He digitally penetrated the woman vaginally and rubbed her breasts. After about 15 minutes of this abuse, Williams told her, "That wasn't so bad." He then kissed her breast and vagina and left. After a bench trial, the district court found Williams guilty of first-degree burglary and first-degree criminal sexual conduct and sentenced him to 202 months' imprisonment.

At the trial for his offenses against this victim, the court also heard testimony from another woman about Williams's conduct in September 1982. The woman testified that she had been asleep when she heard her 12–year–old daughter screaming. The girl had awakened to find Williams kneeling next to her bed and masturbating. Her nightgown was cut from the bottom to the waist, and the girl's mother discovered that her own nightgown had also been cut from the neck to the waist. Williams stole a money order from the apartment, which he cashed the next day.

In 1990, Williams was charged with sexually assaulting yet another woman. In May 1989, the woman had awakened to find Williams in her apartment. He forced her into her bedroom where he removed her clothing at knifepoint, pushed her onto the bed, and ordered her to masturbate. Wielding the knife, he threatened that she either comply, "or I'll do it for you." Authorities found his semen on the woman's underpants. Williams pleaded guilty to second-degree criminal sexual conduct. The district court sentenced him to 36 months' imprisonment, to be served consecutively to his sentence for his July 1989 offenses.

The department of corrections placed Williams on intensive supervised release in November 2002. The department revoked his release for 150 days in June 2003 when he had unauthorized contact with minors. Williams was readmitted to the residential-placement program in October, but he was again terminated from the program in December for repeated dishonesty with staff members and for refusing accountability. The department revoked his release and ordered him to serve another 210 days in prison.

The district court had continued the hearing on the civil-commitment petition several times. On the day the hearing was scheduled to begin in June 2004, Williams proposed that he enter the department of corrections' sex-offender treatment program while incarcerated. The county agreed, and the court ordered an indefinite continuance. The court held that the county could move to reschedule the hearing if Williams failed to successfully complete treatment. Williams entered the department's treatment program in September 2004, but he was terminated from it in June 2005 because he failed to accept responsibility for his sexual offenses.

The district court conducted a hearing on the civil-commitment petition in March

2006. It heard testimony from 11 witnesses, including three psychologists appointed to examine Williams. Each of the psychologists opined that Williams is a sexually dangerous person, that he has a sexual psychopathic personality, and that civil commitment is the least-restrictive alternative available. The court agreed and ordered Williams to be indefinitely committed to the Minnesota Sex Offender Program.

Williams appeals the district court's order for commitment. He argues that the court erred by using rule 15 of the Commitment and Treatment Act Rules as its standard for admitting evidence, that application of rule 15 violated his due process rights, that clear and convincing evidence does not support the district court's finding that he committed harmful sexual conduct against his 1979 victim, and that the district court erred by appointing a third examiner at the county's request.

## ISSUES

I. Does the broad admissibility provision of rule 15 of the Commitment and Treatment Act Rules yield to the Minnesota Rules of Evidence or violate due process as applied to this case?

II. Does the record support the district court's finding that Williams committed harmful sexual conduct in 1979?

III. Does the district court have discretion to appoint more than two examiners in a civil-commitment proceeding?

## ANALYSIS

### I

■ Williams first challenges the district court's interpretation and application of rule 15 of the Commitment and Treat-

ment Act Rules, arguing that it conflicts with the Minnesota Rules of Evidence and that the district court may not admit hearsay in a commitment proceeding. We review the interpretation of statutes and court rules de novo. *Johnson ex rel Johnson v. Johnson,* 726 N.W.2d 516, 518 (Minn.App.2007). When a statute's language is clear, the court must apply its plain meaning. Minn.Stat. § 645.16 (2006). We also accept the plain meaning of rules. *Rubey v. Vannett,* 714 N.W.2d 417, 421 (Minn.2006).

The Minnesota Commitment and Treatment Act provides that the district court "shall admit all relevant evidence at the [commitment] hearing. The court shall make its determination upon the entire record pursuant to the Rules of Evidence." Minn.Stat. § 253B.08, subd. 7 (2006). The Commitment and Treatment Act Rules apply to proceedings under the Minnesota Commitment and Treatment Act and purport to "supersede any other body of rules otherwise applicable." Minn. Spec. R. Commitment & Treatment Act 1(a)(b). Rule 15 provides that the district court "may admit all relevant, reliable evidence, including but not limited to the respondent's medical records, without requiring foundation witnesses." *Id.* 15.

■ The plain language of these provisions neither creates the conflict that Williams protests nor mandates the exclusion of hearsay evidence. The focus of these provisions is relevancy. Section 253B.08, subdivision 7, directs the district court to admit all relevant evidence, basing its determination on the rules of evidence. Clear from its context, the statutory language "its determination" refers to the court's relevancy determination. *See* Minn. R. Evid. 401403 (defining relevance and providing for the admission and exclusion of relevant evidence). Rule 15 of the Commitment and Treatment Act Rules

similarly provides that the guidelines for admissibility are relevance and reliability. Although the statute requires the district court to determine relevancy in accordance with the rules of evidence, the statute does not require application of other rules of evidence. The Commitment and Treatment Act Rules expressly state that they apply to commitment proceedings. Minn. Spec. R. Commitment & Treatment Act 1(a). The district court appropriately relied on section 253B.08, subdivision 7, to admit all relevant evidence, and it appropriately relied on rule 15 and considered the reliability of evidence to determine its relevance to the proceeding.

Williams suggests instead that the statutory language "its determination" refers to the court's ultimate commitment determination, and therefore the rules of evidence, which are more restrictive, apply to the entire proceeding. We do not find this reading reasonable. The statute directs the court to base its determination on the rules of evidence immediately following the language in the statute that directs the court to admit all relevant evidence. In addition to this contextual reason to reject Williams's theory, it is also illogical to read the statute to require the court to make its substantive commitment decision based on the rules of evidence. We read the directive to make this determination "upon the entire record" as logically providing the substantive basis for the evidentiary relevance analysis. We note additionally that section 253B.08 is entitled "Judicial commitment; hearing procedures," and all of the subdivisions within the section address procedural rather than substantive matters. Minn.Stat. § 253B.08 (2006).

■ Williams argues alternatively that applying rule 15 denied him due process because the court improperly admitted summaries of the victims' statements regarding the sexual nature of the 1979 and 1984 offenses. He argues that the allegations from 1979 were too remote in time to permit a defense and that in 1984 he was convicted only of burglary. We see no violation of Williams's right to due process.

■ Incidents establishing a course of harmful sexual conduct need not be recent and are not limited to those that resulted in a criminal conviction. *In re Civil Commitment of Ramey,* 648 N.W.2d 260, 268 (Minn.App.2002) (stating that court may consider conduct not resulting in conviction), *review denied* (Minn. Sept. 17, 2002); *In re Irwin,* 529 N.W.2d 366, 374 (Minn. App.1995) (stating that conduct need not be recent), *review denied* (Minn. May 16, 1995). A presumption of admissibility applies in commitment proceedings, and the district court has discretion to determine the admissibility of evidence. *In re Robb,* 622 N.W.2d 564, 574 (Minn.App.2001) (stating that district court has discretion to admit evidence absent erroneous interpretation of law), *review denied* (Minn. Apr. 17, 2001); *In re Morton,* 386 N.W.2d 832, 835 (Minn.App.1986) (stating presumption of admissibility). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. The district court admitted department-of-corrections reports and other assessments that included summaries of victims' statements and Williams's criminal history.

Before addressing due process, we emphasize that the district court acted within the rules by admitting the documents. They were relevant to the allegations in the county's petition because they related to Williams's sexually charged criminal past. The district court diligently vetted the exhibits Williams objected to and examined the reliability of each statement, line-by-line. The court excluded many

statements as unreliable and therefore not probative. The court did not abuse its discretion by admitting the remaining documents. The admitted documents contain statements that were generated closely in time to the events they describe, and they include the accounts of first-hand witnesses, the victims. The record supports the court's findings of relevancy and reliability. Williams argues that he could not defend against the allegations that the burglaries contained a sexual component because he was charged only with burglary in 1979 and the sex-offense charges were dismissed in the 1984 case. But these facts were also before the district court, which had the opportunity to evaluate the evidence of alleged sexual conduct and to determine the weight to give this evidence based on the court's careful reliability assessment. If merited, Williams's argument would require all victims to testify at a commitment hearing. There is no statutory basis for this requirement, and, as this court has recognized, the Confrontation Clause does not apply to commitment proceedings. *Irwin*, 529 N.W.2d 366 at 373. Williams also does not provide any reason he could not have called these women as witnesses if he wanted to challenge the sexual nature of their accounts.

We reject Williams's claim of a due process violation. But in doing so, we do not lightly dismiss Williams's concern about fairness as it regards the consideration of hearsay. We observe that the trustworthiness of evidence is the primary concern of the rules of evidence generally and of the hearsay rule particularly. The purpose of the hearsay rule with its various exceptions is to prevent unreliable evidence from infecting the fairness of process. *See generally* Minn. R. Evid. 803 1989 comm. cmt; *see also id.* 102 (identifying fairness as objective of codified evidentiary rules). Likewise, it is well established that fundamental fairness is the touchstone of due process in proceedings where personal liberty is at stake. *See Jones v. United States*, 463 U.S. 354, 372 n. 2, 103 S.Ct. 3043, 3053 n. 2, 77 L.Ed.2d 694 (1983) (Brennan, J., dissenting) (describing prior holding that "a 'preponderance of the evidence' standard was not sufficient to preserve fundamental fairness to candidates for civil commitment in light of their strong interest in avoiding involuntary confinement and psychiatric treatment"); *Raino v. State*, 255 N.W.2d 398, 399–400 & n. 1 (Minn.1977) (citing federal precedent and noting that juvenile-court due process requires fundamental fairness); *State v. Schabert*, 218 Minn. 1, 5–10, 15 N.W.2d 585, 587–89 (1944) (applying standard of fundamental fairness in due process challenge to criminal trial proceedings). But we are persuaded that the district court's thoughtful preview of offered evidence satisfies the concern about trustworthiness of evidence in this case so that admission of the challenged hearsay evidence about Williams's history of sexual misconduct does not offend his right to a fundamentally fair proceeding.

The petition gave Williams notice that the county planned to rely on the reported events in seeking commitment. The hearing occurred almost three and one-half years after the petition was filed. Williams testified and had an opportunity to refute the allegations. In carefully assessing reliability, the district court served well its role to receive relevant evidence, weigh it, and make findings supported by the record. The hearsay evidence had threshold indicia of reliability for admission, and Williams has not shown that the challenged evidence is false or unreliable. And although the district court made no finding concerning admissibility under rule 807 of the Rules of Evidence because the rule does not apply, the evidence might have been considered under that rule even

if it did apply. *See* Minn. R. Evid. 807 (providing residual exception to hearsay rule). We also note that the district court heard testimony by the examiners, who were allowed to review and rely on all of the county's proposed exhibits regardless of their potential admissibility. *See id.* 703(a) (stating that expert opinion may be based on facts or data not admissible in evidence). The district court did not abuse its discretion or violate Williams's right to due process by receiving the challenged evidence. We turn to Williams's challenge based on the sufficiency of evidence.

## II

The Minnesota Commitment and Treatment Act permits civil commitment on clear and convincing evidence that a person is either a sexually dangerous person or a sexual psychopathic personality. Minn.Stat. §§ 253B.02, subd. 17, .18, subd. 1(a) (2006). A sexually dangerous person is one who has engaged in a course of harmful sexual conduct, has manifested a sexual, personality, or other mental disorder or dysfunction, and as a result, is likely to engage in acts of harmful sexual conduct. *Id.* § 253B.02, subd. 18c(a) (2006). To classify a person as a sexual psychopathic personality requires clear and convincing evidence of three criteria: (1) the existence of either emotional instability, impulsive behavior, a lack of customary standards of good judgment, or a failure to appreciate the consequences of personal acts; (2) a habitual course of sexual misconduct that results from the presence of a condition in the first criterion; and (3) an utter lack of power to control sexual impulses such that the person is dangerous to others. Id., subd. 18b (2006).

■ Williams does not raise a general challenge to the sufficiency of the evidence to support the district court's order for civil commitment. He instead asserts specifically that clear and convincing evidence does not support the district court's finding that he sexually assaulted his 1979 victim. The court did not expressly find that Williams sexually assaulted the woman, but it found that Williams's first-degree burglary conviction that resulted from his interaction with her involved harmful sexual conduct. A rebuttable presumption that conduct is harmful sexual conduct attaches to first-degree burglary when the conduct was motivated by sexual impulses "or was part of a pattern of behavior that had criminal sexual conduct as a goal." *Id.,* subd. 7a(b) (2006).

Clear and convincing evidence supports the court's finding that Williams committed harmful sexual conduct in 1979. The district court received several exhibits summarizing Williams's conduct against the 1979 victim, including the presentencing investigation, a parole-violation report that resulted from Williams's window peeping in 1982, and an assessment report written in 2002. The parole-violation report includes the 1979 victim's account of the offense. The district court also received a copy of the findings from the bench trial convicting Williams of first-degree burglary and criminal sexual conduct against the July 1989 victim. Four other victims of Williams's sexual conduct, including his 1979 victim, testified at the trial and provided *Spreigl* evidence. After detailing Williams's crime against his July 1989 victim, the court found that Williams had "committed similar crimes in the same geographic area" and cited these women. Clear and convincing evidence supports the district court's finding that Williams's conduct against the 1979 victim constituted harmful sexual conduct for the purposes of the civil commitment. The only remaining

issue regards the appointment of examining psychologists.

## III

Williams challenges the district court's appointment of three examiners. After the county filed its petition, the district court appointed an examiner. The court then granted Williams's request to appoint a second examiner. In June 2003, the county requested that the court appoint a third examiner. The court granted the request and appointed the psychologist suggested by the county. Williams argues that the district court lacked authority to appoint a third examiner. We disagree.

The Minnesota Commitment and Treatment Act requires the district court to appoint an examiner after a commitment petition is filed and to inform the proposed patient of his right to an independent examiner. Minn.Stat. § 253B.07, subd. 3 (2006). If requested, the act requires the court to appoint a second examiner selected by the proposed patient. *Id.* The Commitment and Treatment Act Rules do not address the court's authority to appoint examiners. The rules require the court administrator to maintain a list of examiners and require each court-appointed examiner to examine the proposed patient and prepare a separate report stating the examiner's opinion and the factual basis for the opinion. Minn. Spec. R. Commitment & Treatment Act 1112.

Although these provisions require the court to appoint at least one examiner, and a second if requested, we find no statutory limit on the district court's discretion to appoint an additional examiner if requested by a party. Rule 11 also appears to contemplate that additional examiners may be requested for court appointment. The rule states that "[i]f a party seeks appointment of an examiner not on the [court administrator's examiners] list ... the party shall seek approval of the court prior to appointment." *Id.* 11. The rule indicates that "a party" may request an examiner, which we read to indicate that *either* party may make the request. If Williams were correct that section 253B.02, subdivision 3, permits only two examiners, the rule would correspond to the statute only if it referred just to the proposed patient or respondent because the court appoints the first examiner without a request and the second examiner at the patient's request.

Moreover, Williams does not indicate how the appointment of the third examiner prejudiced him. All three examiners formed the same opinion that Williams is a sexually dangerous person, that he has a sexual psychopathic personality, and that the least-restrictive alternative for meeting his needs and the needs of public safety is commitment to the Minnesota Sex Offender Program. We see no abuse of discretion by the appointment.

## DECISION

The district court applied the proper standard when admitting evidence at Williams's commitment hearing and did not violate his right to due process. The record supports the court's findings in its order for indeterminate commitment. The court did not abuse its discretion by appointing a third examiner.

**Affirmed.**