*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-1052**

In the Matter of the Civil Commitment of: Lisa Jo Breitkreutz.

**Filed January 12, 2026**
**Affirmed**
**Smith, Tracy M., Judge**

McLeod County District Court
File No. 43-PR-25-549

Lisa Jo Breitkreutz, Hutchinson, Minnesota (self-represented appellant)

Ryan Hansch, McLeod County Attorney, Carol J. Mayer, Assistant County Attorney, Glencoe, Minnesota (for respondent McLeod County Social Services)

　　Considered and decided by Smith, Tracy M., Presiding Judge; Slieter, Judge; and Harris, Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

　　Appellant Lisa Breitkreutz challenges her civil commitment by the district court as a person who poses a risk of harm due to mental illness. Breitkreutz, who is self-represented in this appeal, appears to argue that (1) the district court denied her procedural and substantive due process of law; (2) the necessary elements for civil commitment were not proved because she is not a danger to herself or others, she has not been diagnosed with a mental illness, the district court did not consider less restrictive alternatives, and her

commitment was based, in part, on perjured evidence; and (3) she was not provided adequate assistance of counsel. We affirm.

## FACTS

Between May and December 2024, Breitkreutz was charged with various crimes across several files in McLeod County. The district court ordered Breitkreutz to undergo a competency evaluation pursuant to Minnesota Rule of Criminal Procedure 20, following which Breitkreutz was determined to be incompetent to proceed. *See* Minn. R. Crim. P. 20.01-.04. The McLeod County prepetition screening committee then screened Breitkreutz for mental-health commitment and unanimously determined that she met all the criteria for a civil-commitment petition to be filed. McLeod County Health and Human Services (MCHHS) filed a petition to civilly commit Breitkreutz as a person who is mentally ill and poses of risk of harm.

The district court appointed an attorney for Breitkreutz, appointed Dr. Linda Marshall as a court-appointed examiner, and held a preliminary hearing. The district court concluded that "serious physical harm to [Breitkreutz] or others is likely if [she] is not immediately confined" and specified that Breitkreutz must remain at the McLeod County jail until her commitment hearing. As requested by Breitkreutz during the hearing, the district court reserved her right to have a second examiner appointed.

A commitment hearing was scheduled. Two days before the commitment hearing, Dr. Marshall conducted a psychological examination of Breitkreutz and filed a report of her findings. Dr. Marshall's report concluded that "there is sufficient evidence to support commitment of [Breitkreutz] as a person who poses a risk of harm due to mental illness."

2

At the commitment hearing, Dr. Marshall, Breitkreutz, and Breitkreutz's friend D.H. testified. Also admitted into evidence were police reports and criminal complaints from each criminal matter, Breitkreutz's rule 20 evaluation, the prepetition screening report, and Dr. Marshall's report. The district court found "that Ms. Breitkreutz has a major mental illness" and "is a threat to others." The district court also found that there were no suitable less restrictive alternatives to judicial commitment. The district court determined that "the State has proven by clear and convincing evidence that a full commitment is necessary at this time."

Breitkreutz appeals.

## DECISION

## I. Breitkreutz was not deprived of her constitutional right to procedural or substantive due process.

Breitkreutz broadly argues that her "procedural and substantive legal due processes were not upheld in the case." Appellate courts review whether a person's due process rights have been violated de novo. *Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 413 (Minn. 2007).

### A. Procedural Due Process

Under the United States and Minnesota Constitutions, the government may not deprive an individual of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. "Because civil commitment deprives a person of liberty, the protections of the Due Process Clause apply to civil-commitment proceedings."

3

*Beaulieu v. Minn. Dep't of Hum. Servs.*, 798 N.W.2d 542, 548-49 (Minn. App. 2011), *aff'd*, 825 N.W.2d 716 (Minn. 2013).

To determine the sufficiency of procedural protections, courts balance (1) the private interest that will be affected by the governmental action; (2) the risk of erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional procedural safeguards; and (3) the government's interest, including the function involved and the burdens that additional procedural requirements would impose. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *see Bendorf*, 727 N.W.2d at 415-16 (applying *Mathews* in driver's license revocation case).

The Minnesota Commitment and Treatment Act (MCTA or the act), Minnesota Statutes sections 253B.01 to .24 (2024), outlines the procedures for the civil commitment process. The MCTA identifies the notice and procedural requirements for prepetition screening, the notice and procedural requirements for the filing of a petition for commitment, the requirements for holding a proposed patient pending a commitment order, and the requirements of a preliminary hearing. Minn. Stat. § 253B.07. The MCTA provides a proposed patient the right to counsel during any proceeding under the act. *Id.*, subd. 2c. The act also establishes procedural requirements regarding a commitment hearing. Minn. Stat. § 253B.08. The proposed patient has the right to attend and testify and to present and cross-examine witnesses, including court examiners. *Id.* The proposed patient also has the right to request a second court examiner. Minn. Stat. § 253B.07, subd. 1(c)(1).

Applying the three-factor due-process test, we see no indication that these procedural protections—which Breitkreutz does not claim were not followed in this case—

were inadequate. *See Mathews*, 424 U.S. at 335. As to the first factor, Breitkreutz certainly has a liberty interest in the commitment proceedings. As to the second factor, the procedures used did not create a risk of erroneous deprivation of that interest. At the preliminary and commitment hearings, Breitkreutz was represented by counsel. At the commitment hearing, Breitkreutz testified at length and called a friend as a witness. Breitkreutz's attorney cross-examined Dr. Marshall, the court examiner. As to the third factor, the county has a strong interest in protecting the public and ensuring that persons who pose a risk of harm due to mental illness receive treatment. This interest is especially strong when, as here, the proposed patient is facing criminal charges for such crimes as assault with a dangerous weapon and making threats of violence. Balancing the three factors, we conclude Breitkreutz's right to procedural due process was not violated.

### B.      Substantive Due Process

Breitkreutz also argues that her substantive due process rights were violated. "[S]ubstantive due process protects individuals from certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999) (quotations omitted). But "the state long has had the power to civilly commit certain persons in narrow circumstances." *Id.* "A cognizable claim of a Fourteenth Amendment substantive due process violation must describe governmental conduct so egregious that it 'shocks the conscience.'" *Mumm v. Mornson*, 708 N.W.2d 475, 487 (Minn. 2006) (citing *Rochin v. California*, 342 U.S. 165, 172-74 (1952)).

5

Breitkreutz makes no argument, and our review of the record reveals no evidence, of egregious conduct or arbitrary decision-making by the county. Breitkreutz's substantive-due-process challenge therefore fails.

**II.   The district court did not err by determining that Breitkreutz meets the statutory criteria for civil commitment.**

Appellate courts review de novo "whether there is clear and convincing evidence in the record to support the district court's conclusion that appellant meets the standards for commitment." *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003). A district court's civil-commitment determination "must be justified by findings based upon evidence at the hearing." *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). A district court may consider any evidence that is sufficiently reliable, including hearsay. *In re Civ. Commitment of Williams*, 735 N.W.2d 727, 730-33 (Minn. App. 2007), *rev. denied* (Minn. Sept. 26, 2007). Appellate courts review the district court's findings of fact for clear error, viewing the record in the light most favorable to the district court's findings. *In re Civ. Commitment of Spicer*, 853 N.W.2d 803, 807 (Minn. App. 2014). Appellate courts defer to a district court's credibility determinations. *Knops*, 536 N.W.2d at 620.

To order Breitkreutz's judicial commitment under the MCTA, the district court had to find by clear and convincing evidence that Breitkreutz "poses a risk of harm due to mental illness" and that there is "no suitable alternative" to commitment. Minn. Stat. § 253B.09, subd. 1(a). A "person who poses a risk of harm due to a mental illness" includes

> any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or to reason or

6

> understand, that is manifested by instances of grossly disturbed behavior or faulty perceptions and who, due to this impairment, poses a substantial likelihood of physical harm to self or others as demonstrated by:
>
> . . . .
>
> (3) a recent attempt or threat to physically harm self or others.

Minn. Stat. § 253B.02, subd. 17a.

Breitkreutz appears to make four arguments as to why the statutory criteria for civil commitment were not adequately proved: (1) the district court erred by determining that she poses a danger to herself or others; (2) Breitkreutz has not actually been diagnosed with a mental illness; (3) the district court did not adequately consider less restrictive alternatives; and (4) her commitment was based, at least in part, on perjured evidence. We address each argument in turn.

## A. Danger to Self or Others

For the district court to commit Breitkreutz, the county had to prove by clear and convincing evidence that she poses a substantial likelihood of physical harm to herself or others. *See In re McGaughey*, 536 N.W.2d 621, 624 (Minn. 1995). "[U]nsupported speculation" about what a person may do in the future and evidence of inappropriate but not "assaultive" behaviors are not sufficient to establish a substantial likelihood of harm. *Id.*

The district court concluded that "[t]here is clear and convincing evidence that [Breitkreutz] poses a danger to self or others." There is ample evidence in the record to support that conclusion. The record includes evidence that, in May 2024, Breitkreutz was

7

charged with threats of violence made against relatives via voicemail, including threats to "claw [victim's] eyes out" and subsequently waiting on the relative's front steps. This incident, and another incident in which Breitkreutz picked up her young nephew from school without informing anyone, led to domestic-assault no-contact orders (DANCOs) and orders for protection protecting some of Breitkreutz's family members. The record also shows that, in October 2024, Breitkreutz was charged with violating two of those orders.

The record also includes evidence that, in December 2024, after Breitkreutz called a family member crying and making statements that made the family member concerned about Breitkreutz's safety, police conducted a welfare check. According to police reports, when officers entered Breitkreutz's home, she held scissors and a hot curling iron toward officers and threatened to shoot and "use deadly force" against the officers. Breitkreutz was charged with assault with a dangerous weapon, threats of violence, obstruction of legal process, and violation of a DANCO.

Finally, the record also includes Dr. Marshall's testimony. She testified that "[Breitkreutz's] behaviors that she's exhibited and threatened behaviors makes her a danger to others." Additionally, Dr. Marshall testified that "if [Breitkreutz] were released back into the community untreated, I believe she would be a danger to others."

Breitkreutz argues in her appellate brief that she has "never been a danger to [herself] or others" and she similarly testified during the commitment hearing. Breitkreutz also testified that her actions during the welfare check were a result of fear due to the police unexpectedly entering her home, not due to mental illness. Breitkreutz's friend D.H. testified that, in his opinion, Breitkreutz is "all talk" and "would never harm anybody."

8

But, even though Breitkreutz provided contrary evidence, the record as a whole contains sufficient evidence to prove, under a clear-and-convincing standard, that Breitkreutz poses a danger to self or others. The district court's determination was based on past, assaultive conduct; the examiner's evaluation; and the absence of a history of Breitkreutz treating her mental illness. The district court's determination was therefore not based on "unsupported speculation" or merely "inappropriate" behavior. *See McGaughey*, 536 N.W.2d at 624.

## B.    Diagnosis

Breitkreutz appears to argue that she has not been diagnosed with a mental illness and is therefore not a "person who has a mental illness" under Minnesota Statutes section 235B.02, subdivision 17. As defined by statute, a "person who has a mental illness" is one who has "an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, and is manifested by instances of grossly disturbed behavior or faulty perceptions." Minn. Stat. § 235B.02, subd. 17. That fact must be proved by clear and convicting evidence. Minn. Stat. § 253B.09, subd. 1(a).

Breitkreutz's rule 20 evaluation, which was admitted into evidence, states that Breitkreutz "evidence[s] symptoms of bipolar disorder v delusional disorder v substance/medication induced psychotic disorder, and further diagnostic clarification is warranted." And Dr. Marshall testified that "Breitkreutz is diagnosed with a major mental illness, which is a substantial psychiatric disorder of mood, thought, orientation, or memory. Her diagnosis is a mood disorder, and I would concur with the diagnosis . . . from

9

the Rule 20 [evaluation] of unspecified bipolar or other related disorder." Dr. Marshall's report also states that Breitkreutz is "diagnosed with a major mental illness (Unspecified Bipolar disorder or related disorder)" and "her diagnoses are considered to be substantial psychiatric disorders of mood, thought, orientation, perception or memory." Dr. Marshall's testimony and report seem to suggest that Breitkreutz did receive a diagnosis via her rule 20 evaluation.

Regardless of whether Breitkreutz was officially diagnosed with a mental illness in the rule 20 evaluation, however, the record includes clear and convincing evidence that she is a person with a mental illness as defined by statute.[1] This evidence includes the rule 20 description of Breitkreutz's symptoms, Dr. Marshall's concurrence that Breitkreutz has unspecified bipolar or other related disorder, and Breitkreutz's behavior in past interactions with police and others. The record is sufficient to prove by clear and convincing evidence that Breitkreutz has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, or orientation.

### C. Less Restrictive Alternatives

Breitkreutz appears to argue that the district court failed to consider less restrictive alternatives, such as outpatient treatment options. A district court must make findings of fact to support its conclusion that no less restrictive treatment program exists that could meet the needs of the committed person. *In re Civ. Commitment of Ince*, 847 N.W.2d 13,

---

[1] We note that Minnesota Statutes section 253B.12 provides that the treatment report required for a *committed* patient who remains in treatment for more than 60 days must set forth the patient's "diagnosis."

10

26 (Minn. 2014) (reversing and remanding for findings in an appeal from commitment as a sexually dangerous person under earlier version of statute, Minn. Stat. § 253B.185, subd. 1(d) (2012)). "Although there is no statutory definition for a 'less restrictive treatment program,' the district court must consider a proposed less restrictive alternative in light of the objectives of commitment: 'the patient's treatment needs and the requirements of public safety.'" *Id.* A reviewing court will not reverse a district court's findings regarding the least restrictive means of treatment unless they are clearly erroneous. *Thulin*, 660 N.W.2d at 144.

The district court concluded that "[t]here is clear and convincing evidence that there is no less restrictive alternative than judicial commitment." To support this conclusion, the district court pointed to Breitkreutz's denial of her diagnosis, the fact that she has not previously participated in therapy or medical management, and the fact that she poses a substantial likelihood of harm to others. The district court specifically found:

> [Breitkreutz] requires the structure and control of court intervention and an in-patient facility to oversee treatment for mental illness. A full judicial commitment is the least restrictive alternative because [Breitkreutz] will receive the necessary support, care, and supervision that will provide [Breitkreutz] an opportunity to take control of mental illness.
>
> . . . .
>
> No suitable alternative to commitment exists because [Breitkeutz] poses a substantial likelihood of harm to self or others as evident by the preceding findings.
>
> . . . .
>
> A full commitment is necessary due to the severity of [Breitkreutz's] untreated symptoms. [Breitkreutz] has no

11

history to show she would follow through with appointments, medications, or other necessary services to treat her mental illness. [Breitkreutz] requires the structure of a supervised setting.

The district court's findings are supported by the evidence. Dr. Marshall testified that inpatient psychiatric unit care would be the "best option" for Breitkreutz. Dr. Marshall testified that she considered outpatient mental-health treatment as an alternative but "was not sure that [Breitkreutz] would follow through with that" and "was not sure that [Breitkreutz] would take medications and – and work with a psychiatric provider." In addition, the record lacks evidence of a history of Breitkreutz voluntarily treating her mental illness. Breitkreutz testified that she has "been willing to . . . get help" and would attend appointments and try prescribed medications, but Breitkreutz also maintained that many of her symptoms were the result of anxiety due to being in jail and that her primary mental-health issues are anxiety and depression. And, as described above, the record contains ample evidence of Breitkreutz's risk of harm to herself or others.

The district court's determination that there is no less restrictive alternative to judicial commitment is based on adequate findings that are supported by the record, considering both Breitkreutz's treatment needs and the requirements of public safety. *See Ince*, 847 N.W.2d at 26.

### D.    Commitment Based on Perjured Evidence

Breitkreutz argues that her commitment was, at least in part, based on perjured evidence from the social worker who filed the petition for commitment. The argument is unavailing. First, Breitkreutz did not raise this issue in the district court, and it is not

properly before us. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (holding that appellate courts generally do not consider issues that were not raised in and decided by the district court). But, even if the issue was properly before us, Breitkreutz has not pointed to any evidence to support the allegation that the social worker committed perjury. Additionally, the social worker was only involved in filing the petition for commitment and was not involved in the screening committee or the commitment hearing and the statements in the petition were not relied on by the district court in making the commitment determination. Accordingly, Breitkreutz's argument that her commitment should be reversed because of the social worker's alleged perjury fails.

### III. Breitkreutz was not denied effective assistance of counsel.

Breitkreutz argues that her attorney "did not adequately prepare" for her defense because he failed to call witnesses and because Breitkreutz was not "given the opportunity for a second examiner." We review claims of ineffective assistance of counsel de novo. *In re Civ. Commitment of Johnson*, 931 N.W.2d 649, 657 (Minn. App. 2019), *rev. denied* (Minn. Sept. 17, 2019). "Appellate courts apply a strong presumption that [an attorney's] performance falls within the wide range of reasonable professional assistance. General assertions of error without evidentiary support are inadequate to establish ineffective assistance of counsel. Moreover, a reviewing court generally will not review attacks on counsel's trial strategy." *Id.* (citations and internal quotations omitted).

The MCTA provides a statutory right for a person to be represented by counsel during civil commitment proceedings. Minn. Stat. § 253B.07, subd. 2c. The act requires the attorney to

(1) consult with the person prior to any hearing;

(2) be given adequate time and access to records to prepare for all hearings;

(3) continue to represent the person throughout any proceedings under this chapter unless released as counsel by the court; and

(4) be a vigorous advocate on behalf of the person.

*Id.* If a person claims denial of their statutory right to counsel, the appellate court "analyzes the claim by borrowing the analytical framework ordinarily used in criminal cases when applying the Sixth Amendment right to counsel." *Beaulieu*, 798 N.W.2d at 550.

Under the Sixth Amendment standard, counsel is inadequate if they fail to exercise the "customary skills and diligence" of a reasonably competent attorney under similar circumstances. *Sather v. State*, 352 N.W.2d 79, 81 (Minn. App. 1984), *rev. denied* (Minn. 1984). In criminal matters, a defendant must show both that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). There is a strong presumption that an attorney's performance was reasonable. *State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986). Reviewing courts "generally will not review attacks on counsel's trial strategy." *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004). "Which witnesses to call at trial . . . are questions that lie within the proper discretion of the trial counsel." *Jones*, 392 N.W.2d at 236.

### A. Second Examiner

Under the MCTA, the proposed patient has a right to receive upon request an independent second examination by an "examiner of the patient's choosing to be paid for by the county." Minn. Stat. § 253B.07, subd. 3.

At the preliminary hearing, Breitkreutz's attorney reserved Breitkreutz's right to a second evaluator. At the beginning of the commitment hearing, Breitkreutz's attorney stated that he had discussed with Breitkreutz "the option of having a second examiner appointed," that "[s]he's decided not to have a second examiner appointed, but simply have a contested hearing," and that they were ready to proceed. Breitkreutz indicated no disagreement with this statement by her attorney, did not mention a second examiner when she testified, and has not cited any evidence that contradicts her attorney's statements at the hearing. Breitkreutz asserts that a second examination was "ordered by the court," but no such order is reflected in the record. On this record, it appears that Breitkreutz's attorney reasonably acted in accordance with Breitkreutz's wishes when he stated that she waived her right to a second examiner.

## B. Additional Witnesses

Breitkreutz contends that her attorney "refused" to call three witnesses. Breitkreutz does not specify which witnesses she hoped to call, aside from Dr. Frye, who completed Breitkreutz's rule 20 evaluation. Breitkreutz alleges that testimony from Dr. Frye would "dispute the illiterate ideas proposed by the social workers or clarify my need of mental health services."

Breitkreutz does not assert that she actually requested that her attorney present additional witnesses. But, even assuming that Breitkreutz did request to present additional witnesses, it is unclear how doing so would have "clarified [Breitkreutz's] need for mental health services" as she alleges. Breitkreutz focuses on language about risk of harm in the rule 20 report and disputes its interpretation. While the rule 20 evaluation was accepted

15

into evidence by the district court, the district court's findings regarding Breitkreutz's psychological condition appear to hinge on Dr. Marshall's report and testimony based on the examination conducted for civil-commitment purposes. Moreover, Breitkreutz has not explained how Dr. Frye's testimony would have changed the outcome, as many of Dr. Frye's findings were aligned with Dr. Marshall's.

Applying the strong presumption that Breitkreutz's attorney's performance was within the range of reasonable professional assistance, considering the lack of evidentiary support provided by Breitkreutz, and recognizing the trial counsel's discretion to make strategic decisions, we conclude that Breitkreutz has failed to establish that she received ineffective assistance of counsel. Our review of the record reveals that Breitkreutz's attorney consulted with Breitkreutz prior to the hearings, was prepared for the hearings, and was familiar with the relevant documents and Breitkreutz's pending criminal matters. Her counsel cross-examined witnesses, called witnesses on Breitkreutz's behalf, and generally advocated for her throughout the proceedings, specifically arguing for less restrictive alternatives to civil commitment. On this record, Breitkreutz's counsel met the statutory requirements outlined for representation in civil commitment hearings, *see* Minn. Stat. § 253.B.07, subd. 2(c), as well as the Sixth Amendment standard of objectively reasonable representation, *see Strickland*, 466 U.S. at 687-88. Breitkreutz's ineffective-assistance-of-counsel claim therefore fails.

**Affirmed.**