In the Matter of the CIVIL
COMMITMENT OF
Ryan J. RABOIN.

No. A05–615.

Court of Appeals of Minnesota.

Sept. 21, 2005.

Carrie M. Vaia, Joslin, Ryan & Berry Law Offices, P.A., Chisago City, MN, for appellant Ryan J. Raboin.

Katherine M. Johnson, Chisago County Attorney, Susan E. Drabek, Assistant County Attorney, Center City, MN, for respondent Gerald Gammel, M.D.

Considered and decided by MINGE, Presiding Judge; WILLIS, Judge; and STONEBURNER, Judge.

## OPINION

WILLIS, Judge.

Appellant challenges the district court's order authorizing involuntary administration of neuroleptic medication and the court's amended order denying appellant and his mother's request to appoint appellant's mother as his substitute decision-maker. Appellant argues that (1) the order authorizing the administration of neuroleptic medication lacks the specificity required by law, and (2) the district court erred by concluding that it could not appoint appellant's mother as his substitute decision-maker because she was not designated by the local mental-health authority. We reverse.

## FACTS

The facts of this case are undisputed. In November 2004, appellant Ryan J. Raboin was adjudicated mentally ill and was committed to the custody of the Commissioner of Human Services. In January 2005, the facility treating Raboin petitioned for authorization to administer neuroleptic medication to him. The district court held a *Jarvis* hearing on February 16, 2005. On that same day, Raboin requested that the district court appoint Raboin's mother as his substitute decision-maker should the district court find that Raboin lacked capacity to make decisions regarding neuroleptic medication.

The next day, the district court issued an order determining that Raboin lacked the capacity to make decisions regarding the administration of neuroleptic medication and authorizing the facility to treat Raboin with neuroleptic medication without his consent. The district court's order expires on February 16, 2007, or at the termination of Raboin's commitment, whichever occurs first. The district court's memorandum addressed Raboin's request to appoint his mother as his substitute decision-maker, but the order did not. On March 2, 2005, the district court issued an amended order denying the request. The district court appointed no alternative substitute decision-maker for Raboin. This appeal follows.

## ISSUES

1. Does the district court's order adequately specify the course of treatment authorized for Raboin's treatment?

2. Did the district court err by concluding that an individual substitute decision-maker must first be designated by the local mental-health authority?

## ANALYSIS

 We review the record in the light most favorable to the district court's decision. *In re Knops*, 536 N.W.2d 616, 620 (Minn.1995). We will affirm the district court's findings unless they are clearly erroneous. *In re Martin*, 527 N.W.2d 170, 172 (Minn.App.1995). But statutory construction is a question of law subject to de novo review. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). And any ambiguities in the Civil Commitment Act should be "construed against the state and in favor of the

person who is being deprived of his or her liberty." *In re Colbert*, 464 N.W.2d 505, 507 (Minn.1991).

### I.

Patients subject to civil commitment are presumed to have the capacity to make decisions regarding the administration of neuroleptic medication. Minn.Stat. § 253B.092, subd. 5(a) (2004). If a patient refuses such treatment and the district court finds that the patient lacks the capacity to make that decision, the district court may authorize the treating facility to administer neuroleptic medication.[1] *Id.*, subd. 8(e) (2004).

Raboin argues that the district court's order authorizing the involuntary administration of neuroleptic medication violates his rights under *Price v. Sheppard*, 307 Minn. 250, 239 N.W.2d 905 (1976), and *Jarvis v. Levine*, 418 N.W.2d 139 (Minn. 1988), because (1) the order is unclear regarding the authorized duration of the neuroleptic-medication treatment; (2) the order does not limit the dosage authorized for Raboin's treatment; and (3) the order allows Raboin to be treated "with any neuroleptic medication."

In *Price v. Sheppard*, the Minnesota Supreme court concluded that involuntary, intrusive forms of treatment infringe on a committed patient's constitutional right to privacy. 307 Minn. at 257–59, 239 N.W.2d at 910–11. Because of the potentially severe effects of intrusive treatment, the supreme court determined that decisions regarding the administration of such treatment should not be left solely to the discretion of medical personnel, and it

---

1. The record shows that Raboin's six-month commitment ended in May 2005. While the parties do not address whether Raboin's appeal of the order authorizing the administration of neuroleptic medication is moot, we may raise the issue on our own. *In re*

*Schmidt*, 443 N.W.2d 824, 826 (Minn.1989). We conclude that the issue is not moot because, due to the relatively short duration of initial commitments, this issue is "capable of repetition yet evading review." *In re Kinzer*, 375 N.W.2d 526, 529–30 (Minn.App.1985).

adopted procedures to protect the rights of unconsenting patients when the administration of intrusive treatment is being considered. *Id.* at 262, 239 N.W.2d at 912–13. In *Jarvis v. Levine,* the supreme court, applying Minnesota statutes and the Minnesota Constitution, held that the involuntary administration of neuroleptic medication is an intrusive treatment requiring the application of the procedures described in *Price.* 418 N.W.2d at 148.

In interpreting *Jarvis,* this court determined that a district court's order authorizing the involuntary administration of neuroleptic medication must identify "the limits on the hospitals' authority to administer a course of treatment." *In re Steen,* 437 N.W.2d 101, 104 (Minn.App.1989). This court further interpreted " 'course of treatment' as a reasonably specific time period during which a physician may attempt to treat a patient with a reasonably specific dosage of a particular neuroleptic medication, or an equivalent dosage of another or several other types of neuroleptic medication." *Id.; see also In re Lambert,* 437 N.W.2d 106, 108 (Minn.App.1989) (finding that the district court's order, taken as a whole, adequately outlined a course of treatment because the findings specified the particular medication and limits on the dosage to be administered to the patient), *review denied* (Minn. May 12, 1989). This court also concluded that orders authorizing the administration of neuroleptic medication must be "tailored to the circumstances of the individual situation," noting that "[s]ome orders will require more specificity on the authorized course of treatment, while others will require less." *Steen,* 437 N.W.2d at 105 (footnote omitted).

After *Jarvis,* the Civil Commitment Act was amended in 1989 to include a judicial procedure for authorizing the administration of neuroleptic medication to unconsenting patients. 1989 Minn. Laws ch. 282, art. 2, § 100. But although *Steen* was decided in 1989, it was not until 1996 that the legislature addressed in the statute the issues of the duration of authorized treatment and the dosage of neuroleptic medication authorized for the treatment of an unconsenting patient.[2] 1995 Minn. Laws ch. 189, § 3.

### A. Duration of Treatment

■ Raboin first argues that the only restriction in the district court's order "is that the order is valid only until the 'termination of the commitment.' " Under Minn. Stat. § 253B.092, subd. 8(g), a district court "may authorize the administration of neuroleptic medication until the termination of a determinate commitment." Here, the district court's order expires on February 16, 2007, or at the termination of Raboin's commitment, should it occur first. Because Raboin's commitment is determinate and the district court's order expires no later than the termination of Raboin's commitment, the duration of the order is specifically authorized by statute.

### B. Authorized Dosage

■ Raboin also argues that the district court's order lacks the specificity required by law because it fails to identify the dosage of neuroleptic medication authorized for Raboin's treatment. But the statute provides that "[t]he court may limit the maximum dosage of neuroleptic medication that may be administered." Minn.Stat. § 253B.092, subd. 8(h). This language is permissive, not mandatory. *See* Minn. Stat. § 645.44, subd. 15 (2004) (providing that " 'may' is permissive"). Therefore,

---

**2.** In 1997, the legislature replaced the previous provisions regarding the administration of neuroleptic medication in section 253B.03, subdivision 6c, with section 253B.092. 1997 Minn. Laws ch. 217, art. 1, § 60. Section 253B.092 is currently effective.

the fact that the district court's order does not identify a maximum dosage authorized for Raboin's treatment is not fatal to the order's validity.

### C. Type of Neuroleptic Medication Authorized

 Finally, Raboin argues that the district court's order is legally insufficient because it allows Raboin to be treated with any neuroleptic medication. While the legislature has specifically addressed the issues of duration and dosage of authorized medication, it has not addressed the directive in *Steen* that a district court's order must identify the neuroleptic medication or medications that are authorized to treat an unconsenting patient so that the order is tailored to the specific circumstances of the individual situation. *Steen*, 437 N.W.2d at 104–05. A patient's need for treatment with neuroleptic medication must be balanced against the intrusiveness of that treatment. *Id.* Because different medications have different side effects, the type of neuroleptic medication authorized is directly related to the degree of intrusiveness of neuroleptic-medication treatment. *Id.* Because a patient's constitutional rights are at stake, we conclude that a district court's order that does not identify the particular neuroleptic medication or medications authorized to treat an unconsenting patient is not sufficiently tailored to the specific circumstances and fails to protect the patient's rights. Here, the district court's order does not identify any particular neuroleptic medication that is authorized for Raboin's treatment. Because the order is not sufficiently tailored to Raboin's circumstances, it lacks the required specificity.

### II.

 Raboin argues finally that the district court improperly denied his and his mother's request that Raboin's mother be appointed as his substitute decision-maker, claiming that the district court misinterpreted the statute when it found that an individual substitute decision-maker must be designated by the local mental-health authority. The statute provides:

> Upon request of any person, and upon a showing that administration of neuroleptic medications may be recommended and that the person may lack capacity to make decisions regarding the administration of neuroleptic medication, the court shall appoint a substitute decision-maker with authority to consent to the administration of neuroleptic medication as provided in this section. . . . The substitute decision-maker must be an individual or a community or institutional multidisciplinary panel designated by the local mental health authority.

Minn.Stat. § 253B.092, subd. 6(a) (2004). Interpretation of this subdivision is a matter of first impression.

The parties dispute the meaning of the following sentence in subdivision 6(a): "The substitute decision-maker must be an individual or a community or institutional multidisciplinary panel designated by the local mental health authority." The district court construed the statute to mean that the local mental-health authority must designate either an individual or a multidisciplinary panel to be the substitute decision-maker. Raboin urges us to interpret the statute as requiring that the substitute decision-maker must be (1) an individual or (2) a multidisciplinary panel designated by the local mental-health authority.

 "When interpreting a statute, we first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quotation and citation omitted). Words and phrases in a statute

are construed according to rules of grammar and according to their common and approved usage. Minn.Stat. § 645.08(1) (2004). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions." Minn. Stat. § 645.16 (2004). When the words of a statute are ambiguous, we attempt to ascertain the intention of the legislature by considering, inter alia, the object of the statute, the consequences of a particular interpretation, and the legislative history. *See id.* We conclude that the statute is ambiguous. Both the district court and Raboin have offered reasonable interpretations.

The process for determining a substitute decision-maker was added to the Civil Commitment Act in 1997. 1997 Minn. Laws ch. 217, art. 1, § 60. Before the enactment of section 253B.092, the Minnesota legislature requested that the supreme court appoint an advisory task force on the civil-commitment system.

The task force's final report recommended a new process for the administration of neuroleptic medication. The task force sought to create a process that would protect patients' civil rights but that would also provide for timely treatment. Minn. Sup.Ct. Advisory Task Force on the Civil Commitment Sys., *Final Report* 41 (Jan. 17, 1996). The task force recommended that, as part of this process, the district court designate a substitute decision-maker for patients who lack the capacity to make decisions regarding the administration of neuroleptic medication. *Id.* at 41–42. The task force explained: "The substitute decision maker appointed by the court can be an individual such as a friend or family member. In addition, the local mental health authority can establish a multi-disciplinary panel, which can be community based or institutional based, to

serve as the substitute decision maker." *Id.* at 42.

In summarizing its recommendations, the task force wrote: "The substitute decision maker shall be an individual or a multi-disciplinary panel, community or institutional, designated by the local mental health authority." *Id.* at 46. The statute adopted by the legislature reflects the wording of the recommendation, except that in the statute the words "community or institutional" precede the term "multi-disciplinary panel," a difference that we conclude is insignificant. Because the legislature adopted in the statute the task force's recommendation, we conclude that the legislature also intended the statute's language to have the meaning described in the task force's explanation that the substitute decision-maker could be either (1) an individual or (2) a multidisciplinary panel designated by the local mental-health authority. While we express no opinion regarding the appointment of Raboin's mother as his substitute decision-maker, the district court erred by concluding that it lacked the authority to appoint her as Raboin's substitute decision-maker because she was not designated by the local mental-health authority.

▪ Further, Minn.Stat. § 253B.092, subd. 6(a), provides that the district court *shall* appoint a substitute decision-maker on the request of any person upon a showing that neuroleptic medications may be recommended and that the person may lack the capacity to make decisions regarding the administration of such medications. This provision is mandatory. *See* Minn. Stat. § 645.44, subd. 16 (2004) (stating that "shall" is mandatory). Here, neuroleptic medication was recommended, and Raboin was found to lack the capacity to make an informed decision regarding his treatment with such medication. Because Raboin requested the appointment of a substitute

decision-maker, the district court erred by failing to appoint *any* substitute decision-maker.

## DECISION

Because the district court's order fails to identify the neuroleptic medication or medications authorized for Raboin's treatment, the order lacks the specificity required by law. The district court erred by concluding that section 253B.092, subdivision 6(a), requires that an individual substitute decision-maker be designated by the local mental-health authority. Further, because the statute requires the district court to appoint a substitute decision-maker at the request of a person when the requisite showing is made and because such a showing was made here, the district court erred by failing to appoint a substitute decision-maker for Raboin. We therefore reverse the district court's order of February 17, 2005, as amended on March 2, 2005, as it relates to (1) the description of the neuroleptic medication authorized and (2) the appointment of a substitute decision-maker.

**Reversed.**