*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0218, A15-0326**

In the Matter of the Civil Commitment of:
Kenneth Raymond Newlin

**Filed June 29, 2015
Affirmed
Smith, Judge**

Aitkin County District Court
File No. 01-PR-14-1026

Christine M. Bright Marwede, Haberkorn Law Offices, Ltd., Aitkin, Minnesota (for appellant)

Lori Swanson, Attorney General, Stephanie Hilstrom, Assistant Attorney General, St. Paul, Minnesota (for respondent Anoka Metro Regional Treatment Center)

James P. Ratz, Aitkin County Attorney, Sarah Winge, Assistant County Attorney, Aitkin, Minnesota (for respondent Aitkin County)

Considered and decided by Worke, Presiding Judge; Hudson, Judge; and Smith, Judge.

**UNPUBLISHED OPINION**

**SMITH**, Judge

We affirm the district court's order committing appellant as a mentally-ill person because the record supports the district court's findings. We also affirm the district court's order authorizing the administration of neuroleptic medications because the

record supports the district court's findings and the district court's order was sufficiently specific.

## FACTS

In August 2013, appellant Kenneth Raymond Newlin was arrested following an altercation with his neighbor. He was charged with felony second-degree assault, felony terroristic threats, misdemeanor obstructing legal process, and two counts of misdemeanor fifth-degree assault. Following a court-ordered competency evaluation under Minn. R. Crim. P. 20, the district court found that Newlin was not competent to stand trial in his criminal case.

Respondent Aitkin County then petitioned for Newlin's civil commitment as a mentally-ill person in November 2014. After hearing testimony from two doctors who had examined Newlin, the district court found that Newlin met the statutory definition of a mentally-ill person and "the statutory criteria for civil commitment." The district court committed Newlin "for an initial period not to exceed six (6) months."

Newlin was transferred to respondent Anoka Metro Regional Treatment Center (AMRTC) on December 10, 2014. The next day, AMRTC petitioned the district court for authorization to administer neuroleptic medications. The district court held a *Jarvis* hearing on AMRTC's motion and authorized the use of neuroleptic medications. *See Jarvis v. Levine*, 418 N.W.2d 139, 150 (Minn. 1988).

2

**D E C I S I O N**

**I.**

Newlin first argues that the district court erred by ordering his civil commitment as a mentally-ill person. In an appeal from a district court's order committing someone as mentally ill, we will not reverse the district court's "findings unless they are clearly erroneous." *In re McGaughey*, 536 N.W.2d 621, 623 (Minn. 1995). But "[w]e review de novo whether there is clear and convincing evidence in the record to support the district court's conclusion that appellant meets the standards for commitment." *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003). A mentally-ill person is

> any person who has an organic disorder of the brain or a substantial psychiatric disorder of thought, mood, perception, orientation, or memory which grossly impairs judgment, behavior, capacity to recognize reality, or to reason or understand, which is manifested by instances of grossly disturbed behavior or faulty perceptions and poses a substantial likelihood of physical harm to self or others as demonstrated by:
> . . . .
> (3)     a recent attempt or threat to physically harm self or others[.]

Minn. Stat. § 253B.02, subd. 13(a) (2014).

At Newlin's commitment hearing, Dr. Dieter Zoglauer testified that he had diagnosed Newlin with delusional disorder, persecutory type, and had made a "probable diagnosis" of post-traumatic stress disorder (PTSD). Dr. Zoglauer concluded that Newlin's condition was a substantial psychiatric disorder "involving his perceptions, his mood, [and] his thoughts." Dr. Zoglauer also concluded that Newlin's condition impaired his judgment and reasoning and "place[d] him at risk for being a threat to others

3

or self." A second examiner, Dr. James Gilbertson, testified that he had independently diagnosed Newlin with delusional disorder, persecutory type, and had concluded that this condition created an "increased risk to act out aggressively toward others."

Newlin argues that there is no evidence of a substantial likelihood of harm to himself or others because he "has not tried to act out on his delusions." But a district court is not required to delay commitment until someone is actually harmed "so long as the danger of appellant's condition ha[s] already become evident." *In re Harvego*, 389 N.W.2d 266, 268 (Minn. App. 1986); *see also In re Terra*, 412 N.W.2d 325, 326, 328 (Minn. App. 1987) (finding sufficient evidence that the appellant posed a danger of harm to himself or others when the appellant refused to leave the workplace of a woman he believed to be his wife, although the appellant did not physically harm himself or the woman).

In addition, the record references Newlin's August 2013 altercation, which resulted in criminal charges. Dr. Zoglauer connected Newlin's condition to his criminal case, explaining that Newlin was "highly suspicious that his neighbor . . . sexually assaulted [Newlin's] girlfriend" and attacked the neighbor to protect his rights, even though there was no evidence of any sexual assault. He concluded that Newlin "was at risk for repeating that kind of behavior." Newlin argues that the August 2013 incident cannot show a substantial likelihood to harm others because his behavior was justified. We disagree. "The statute requires only that a substantial likelihood of physical harm exists, as demonstrated by . . . a recent attempt or threat to harm self or others." *McGaughey*, 536 N.W.2d at 623-24. Newlin does not deny that he confronted his

4

neighbor with a baseball bat. This incident, along with the doctors' expert testimonies, support the district court's finding that Newlin poses a substantial likelihood of harm to others.

Newlin also argues that any attempt or threat to harm himself or others was not "recent." *See* Minn. Stat. § 253B.02, subd. 13(a)(3). Because Newlin failed to raise this issue in the district court, we decline to consider this argument on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the [district] court in deciding the matter before it." (quotation omitted)). We also note that Newlin's conduct toward his neighbor occurred approximately 16 months before his commitment and that those 16 months included proceedings in Newlin's criminal case, a rule-20 evaluation, and commitment proceedings. On this record, Newlin's conduct appears sufficiently recent to support his commitment.

Finally, Newlin argues that the district court clearly erred by finding that no less-restrictive alternatives to commitment were available.[1] Before deciding to commit someone as mentally ill, a district court must consider "reasonable alternative dispositions" and must conclude "that there is no suitable alternative to judicial commitment." Minn. Stat. § 253B.09, subd. 1(a) (2014). The district court must "commit the patient to the least restrictive treatment program or alternative programs which can meet the patient's treatment needs." *Id.* "In reviewing whether the least

---

[1] As part of this argument, Newlin argues that the district court erred by finding him incompetent under rule 20. But the rule-20 decision was made in Newlin's criminal case by a different district court judge and is not at issue in this appeal.

restrictive treatment program that can meet the patient's needs has been chosen, an appellate court will not reverse a district court's finding unless clearly erroneous." *Thulin*, 660 N.W.2d at 144.

The district court stated that it had "considered alternatives" and that there was "no reasonable and available alternative to civil commitment." It also stated that AMRTC was "the least restrictive treatment facility that [would] meet [Newlin's] needs." But the district court erred by failing to specify which alternatives it had considered and rejected. *See* Minn. Stat. § 253B.09, subd. 2 (2014) ("If commitment is ordered, the findings shall also identify less restrictive alternatives considered and rejected by the court and the reasons for rejecting each alternative.").

Nevertheless, we conclude that the error is harmless because the record provides ample support for the district court's finding. Both Dr. Zoglauer and Dr. Gilbertson testified that no alternatives would meet Newlin's needs. Dr. Zoglauer testified that he dismissed alternatives to commitment, including outpatient treatment, because Newlin's issues were serious and required "thorough evaluation." Dr. Gilbertson testified that he dismissed alternatives because the rule-20 action limited the available options and because Newlin did not have "adequate insight" or "voluntariness" to be successful in a less-restrictive program. Because two experts considered and rejected less-restrictive alternatives as unable to meet Newlin's needs and no testimony suggested that alternative treatment options were available, the record supports the district court's finding that no less-restrictive alternatives are available.

The district court did not clearly err by finding that there is a substantial likelihood that Newlin will harm others and that no less-restrictive alternatives are available. *See McGaughey*, 536 N.W.2d at 623. Therefore, the district court did not err by ordering Newlin's civil commitment as a mentally-ill person.

**II.**

Newlin also challenges the district court's authorization of neuroleptic medications. When analyzing a district court's order to administer neuroleptic medication, "[w]e review the record in the light most favorable to the district court's decision" and "affirm the district court's findings unless they are clearly erroneous." *In re Civil Commitment of Raboin*, 704 N.W.2d 767, 769 (Minn. App. 2005). "A patient is presumed to have capacity to make decisions regarding administration of neuroleptic medication." Minn. Stat. § 253B.092, subd. 5(a) (2014). If a patient refuses treatment with neuroleptic medication, the district court can authorize such treatment. *Id.*, subd. 8(a) (2014). But the district court must first determine that the patient lacks capacity to make the decision. *Id.*, subd. 8(e) (2014). When determining whether a patient has the capacity to make decisions regarding neuroleptic medication, the district court must consider:

> (1) whether the person demonstrates an awareness of the nature of the person's situation, including the reasons for hospitalization, and the possible consequences of refusing treatment with neuroleptic medications;
> (2) whether the person demonstrates an understanding of treatment with neuroleptic medications and the risks, benefits, and alternatives; and
> (3) whether the person communicates verbally or nonverbally a clear choice regarding treatment with

7

> neuroleptic medications that is a reasoned one not based on delusion, even though it may not be in the person's best interests.

*Id.*, subd. 5(b) (2014). The district court found that each of these factors supported a conclusion that Newlin lacked the required capacity.

Newlin argues that the district court erred by finding he does not have the capacity to make treatment decisions. He suggests that he has demonstrated an awareness of his situation because he has acknowledged that he has PTSD. But Newlin continues to deny that he has a delusional disorder. At the *Jarvis* hearing, a nurse practitioner, Elaine Fitzgerald, testified that Newlin had no insight into his mental illness, did not believe that he had a delusional disorder, and did not feel that he needed neuroleptic medications. Dr. Gustafson also testified that Newlin understood he had been diagnosed with a delusional disorder but believed that the diagnosis was flawed and incompetent.

Newlin also suggests that he has demonstrated an understanding of the risks and benefits of neuroleptic medications and has communicated a reasoned choice regarding the proposed treatment. But Fitzgerald testified that Newlin was not able to understand the risks and benefits because he believed that neuroleptic medications "would take away his memory." Fitzgerald explained that this belief was based on Newlin's condition and his general paranoia about pharmaceutical companies. Dr. Gustafson testified that Newlin was not able to understand the risks and benefits of neuroleptic medications due to his distrust of medical providers and his belief that he was being persecuted. Although Newlin expressed concerns regarding side effects and preferred a hemp-oil treatment, Dr. Gustafson testified that Newlin's concerns were based on his delusions.

8

We defer to the district court's credibility determinations in decisions regarding neuroleptic medications, particularly when its findings of fact rely on expert testimony. *In re Civil Commitment of Janckila*, 657 N.W.2d 899, 904 (Minn. App. 2003). The expert testimony here supports the district court's finding that Newlin lacked capacity to make decisions regarding neuroleptic medications. *See* Minn. Stat. § 253B.092, subd. 5(b)(3) (explaining that, to have capacity, a patient's decision regarding neuroleptic medications must be reasoned and "not based on delusion"); *Thulin*, 660 N.W.2d at 145 (upholding the district court's finding that the appellant lacked capacity, even though the appellant testified that he rejected neuroleptic medication based on its risks, when a doctor testified that the appellant's refusal of medication was not rational). We therefore conclude that the district court's findings regarding Newlin's lack of capacity were not clearly erroneous. *See Raboin*, 704 N.W.2d at 769.

Newlin also argues that the district court's order authorizing the use of neuroleptic medications was insufficient. "[A] district court's order authorizing the involuntary administration of neuroleptic medication must identify 'the limits on the hospitals' authority to administer a course of treatment.'" *Id.* at 770 (quoting *In re Steen*, 437 N.W.2d 101, 104 (Minn. App. 1989)). In this context, "course of treatment" means "a reasonably specific time period during which a physician may attempt to treat a patient with a reasonably specific dosage of a particular neuroleptic medication, or an equivalent dosage of another or several other types of neuroleptic medication." *Steen*, 437 N.W.2d at 104.

Newlin argues that the district court's order lacks specificity regarding the treatment's expiration date. The district court's order states: "This order expires on _____, or at the termination of the commitment if it occurs before the expiration date." Contrary to Newlin's assertion, the district court's order authorizes treatment only until the end of his commitment, not for the rest of his life. A district court "may authorize the administration of neuroleptic medication until the termination of a determinate commitment." Minn. Stat. § 253B.092, subd. 8(g) (2014). The district court authorized a determinate six-month commitment. As in *Raboin*, the length of Newlin's "commitment is determinate and the district court's order expires no later than the termination of [Newlin's] commitment." *See* 704 N.W.2d at 770. Therefore, the district court's order does not lack specificity regarding the duration of Newlin's treatment.

Newlin also argues that the district court's order lacks specificity regarding medication dosages. The district court "may limit the maximum dosage of neuroleptic medication that may be administered." Minn. Stat. § 253B.092, subd. 8(h) (2014). As this court explained in *Raboin*, "[t]his language is permissive, not mandatory," and the district court is not required to list dosages. 704 N.W.2d at 770-71. Moreover, the record contains discussion of the range of dosages available for each authorized medication.

Finally, Newlin argues that the district court failed to properly identify the authorized medications because it checked four boxes from a list of several possible medications. But the district court is only required to "identify the particular neuroleptic medication or medications authorized to treat an unconsenting patient." *Id.* at 771. It is not required to identify those medications in any specific format. *See Steen*, 437 N.W.2d

10

at 105 (explaining that there is a range of required specificity based on "the circumstances of the individual situation"). Because the district court's order clearly identifies the four authorized medications, it is sufficiently specific.

**Affirmed.**