*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0641**

In the Matter of the
Civil Commitment of:
Ricardo Ray Johnson.

**Filed September 28, 2015
Affirmed
Hudson, Judge**

Hennepin County District Court
File No. 27-MH-PR-15-93

Ricardo Ray Johnson, Anoka, Minnesota (pro se appellant)

Michael O. Freeman, Hennepin County Attorney, John L. Kirwin, Assistant County Attorney, Minneapolis, Minnesota (for respondent county)

Considered and decided by Hudson, Presiding Judge; Schellhas, Judge; and Reilly, Judge.

# U N P U B L I S H E D   O P I N I O N

**HUDSON**, Judge

Appellant challenges the district court's order authorizing the administration of neuroleptic medication without his consent. Appellant argues, among other things, that there was insufficient evidence to establish that he lacked capacity to refuse medication and that the district court's order lacks specificity. Because the district court did not clearly err in authorizing the administration of neuroleptic medication, we affirm.

## FACTS

In November 2014, appellant Ricardo Ray Johnson approached a person at a storage facility and accused the person of harassing him. Appellant later told police that he believed the person had been dropping rocks on his head and placing drugs in the ventilation system. Appellant pulled out a box cutter and cut the person's jacket. Appellant was charged with making terroristic threats, and the district court ordered a Rule 20 competency evaluation. Appellant was deemed incompetent to stand trial and was referred to the mental-health division of the district court.

In February 2015, the mental-health division held a hearing and subsequently concluded that under the Minnesota Commitment and Treatment Act appellant was mentally ill and in need of commitment. Appellant was committed to the commissioner of human services and transported to Anoka-Metro Regional Treatment Center (AMRTC). One week later, an AMRTC practitioner petitioned the court to order the administration of neuroleptic medications. In March 2015, the mental-health division held a hearing on the petition and concluded that appellant lacked capacity to withhold consent for the use of neuroleptic medication, that the administration of neuroleptic medication was necessary and reasonable, and that the expected benefits of administering medication outweighed the risks to appellant and justified the order. Over appellant's objection, the district court authorized the administration of three specific medications in medically indicated dosages.[1] This appeal follows.

---

[1] An order permitting the forcible administration of neuroleptic medication is commonly referred to as a *Jarvis* order. *See Jarvis v. Levine*, 418 N.W.2d 139, 150 (Minn. 1988)

## D E C I S I O N

## I.

We will affirm a district court's findings of fact in an order compelling the involuntary administration of neuroleptic medications unless there is clear error. *In re Civil Commitment of Raboin*, 704 N.W.2d 767, 769 (Minn. App. 2005). We review the record in the light most favorable to the district court's order. *Id.* Although a "patient is presumed to have capacity to make decisions regarding [the] administration of neuroleptic medication," the district court may order such treatment if it determines that the patient lacks capacity to make the decision. Minn. Stat. § 253B.092, subds. 5(a), 8(a),(e) (2014). When making a capacity decision, the district court must consider:

> (1) whether the person demonstrates an awareness of the nature of the person's situation, including the reasons for hospitalization, and the possible consequences of refusing treatment with neuroleptic medications;
> (2) whether the person demonstrates an understanding of treatment with neuroleptic medications and the risks, benefits, and alternatives; and
> (3) whether the person communicates verbally or nonverbally a clear choice regarding treatment with neuroleptic medications that is a reasoned one not based on delusion, even though it may not be in the person's best interests.

*Id.*, subd. 5(b) (2014). Appellant argues that he is capable of rational thought and decision making and therefore should be allowed to refuse neuroleptic medications. But the district court made clear findings, based on the evidence presented, that appellant is mentally ill, that he does not admit he has a mental illness, and that he does not have the

---

(holding that, to preserve a patient's constitutional rights, administration of neuroleptic medication to a patient against that patient's wishes requires prior judicial approval).

ability to understand and utilize information about his mental illness and possible treatments. *See In re Peterson*, 446 N.W.2d 669, 673 (Minn. App. 1989) (stating that a patient's "flat out denial" of mental illness when there is evidence to the contrary can be used to support the finding that a patient "is not in touch with reality"), *review denied* (Minn. Dec. 1, 1989). Moreover, we defer to the district court's findings on credibility, especially where the findings rely on expert testimony. *In re Civil Commitment of Janckila*, 657 N.W.2d 899, 904 (Minn. App. 2003). Here, the district court relied on the consistent expert opinions of multiple mental-health professionals, including the court examiner. Based on the record before us, the district court did not clearly err in finding that appellant lacked capacity to make a decision about taking neuroleptic medications.

When the court finds that a party lacks capacity to make decisions about neuroleptic medication, it must then decide whether to authorize the administration of such medications. Minn. Stat. § 253B.092, subd. 7 (2014). Where there is no information about a party's choice regarding medication prior to lacking capacity to make decisions about neuroleptic medication, the court must make a decision based on "what a reasonable person would do." *Id.*, subd. 7(c). The court must consider factors including the party's values, "medical risks, benefits and alternatives to the proposed treatment," and prior use of neuroleptic medications. *Id.*

Here, the district court made findings that the petitioned-for medications are widely accepted, are not experimental, and are specifically prescribed for appellant's illness. It concluded that the expected benefits of the medication for appellant outweighed the risks to him. On this record, we do not see clear error in these findings.

4

In fact, appellant admits that if he believed he suffered from mental illness, he would take medication.

Appellant next argues that the district court erred because it did not specify the maximum dosage of medication. The district court "may limit the maximum dosage of neuroleptic medication that may be administered." Minn. Stat. § 253B.092, subd. 8(h) (2014). But this is permissive—not mandatory—language; a specific maximum dosage is not required. *Raboin*, 704 N.W.2d at 770-71; *see* Minn. Stat. § 645.44, subd. 15 (2014) (stating that "'[m]ay' is permissive").

Appellant also argues that the district court did not consider the medications' interactions and should have limited the order to a single medication. The district court must identify particular medications tailored to a party's situation. *Raboin*, 704 N.W.2d at 771. But appellant provides no legal citation for the argument that the district court can only authorize a single medication, nor could we locate any such requirement. Because the district court specified three medications, it did not err by ordering that these medications could be administered in the medically-indicated dosages.

## II.

Appellant raises numerous issues related to his civil commitment. But this court previously issued a special term order which dismissed these issues because appellant did not timely serve the appeal with respect to the commitment order. Order, May 12, 2015. Therefore, we decline to address appellant's challenges to his civil-commitment order.

The special term order additionally limits the appeal to challenging the *Jarvis* order. *Id.* Although appellant raises arguments regarding the actions of medical

5

professionals, these questions do not relate to the *Jarvis* order and appellant does not provide a legal basis for this court to review those issues. Further, given this court's special term order, the issues appellant raises related to his criminal trial are not properly before us, and this court cannot now readdress the scope of review announced in the special term order. Minn. R. Civ. App. P. 140.01 (stating that there is no rehearing in the court of appeals); *In re Estate of Sangren*, 504 N.W.2d 786, 788. N.1 (Minn. App. 1993) (concluding that Minn. R. Civ. App. P. 140.01 prohibits an attempt to reargue an issue decided at special term), *review denied* (Minn. Oct. 28, 1993).

**Affirmed.**