*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1139**

In the Matter of the Civil Commitment of:
Leah Christina Graeber

**Filed January 19, 2016
Affirmed
Ross, Judge**

Dakota County District Court
File No. 19HA-PR-11-157

David A. Jaehne, West St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, Stephanie M. Hilstrom, Assistant Attorney General, Marsha E. Devine, Assistant Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Donald E. Bruce, Assistant County Attorney, Hastings, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Halbrooks, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**ROSS**, Judge

Civil commitment patient Leah Graeber is the subject of a district court order authorizing physicians to administer Clozaril to her. Graeber appeals from that order, arguing that the court should have allowed her to continue medication-free. We affirm

because, among other things, the district court did not clearly err in finding facts that support the order.

## FACTS

The state has civilly committed Leah Graeber intermittently since 2001. Her current commitment began in 2011 after she drove her car faster than 100 miles per hour, crossed a grassy median, and struck an oncoming car, killing an 11-year-old boy and seriously injuring his three family members. The district court committed Graeber as mentally ill and dangerous, and she began treatment at the Minnesota security hospital in St. Peter.

Graeber has often refused to take prescribed medications. Her refusals have prompted the district court several times to issue so-called *Jarvis* orders, which have generally authorized hospital staff to administer neuroleptic Clozaril (commonly called Clozapine). Clozaril's side effects include sedation, orthostatic hypotension, temperature elevation, hypersalivation, and, in rare cases, suppression of white-blood-cell production.

In March 2015, Graeber's treating psychiatrist filed a petition seeking renewed authorization to treat Graeber with several neuroleptic medications, including Clozaril. The district court appointed Dr. Thomas Gratzer to examine Graeber. Dr. Gratzer's report agreed with the proposed treatment using various neuroleptics, but it failed to include Clozaril. Dr. Gratzer later testified that omitting Clozaril had been an oversight.

The district court issued a *Jarvis* order finding Graeber incompetent to make consent-oriented decisions about the use of neuroleptic medications and authorizing physicians to use several listed neuroleptics. The order did not authorize Clozaril expressly but stated that Graeber was willing to try the drug. The Dakota county attorney moved to

2

amend the order to include up to the maximum recommended dosage of 900 milligrams of Clozaril daily. Dr. Gratzer again examined Graeber.

At the amendment hearing in June, security-hospital psychiatrist James Christensen testified that Graeber had recently been through a "medication wash" so that hospital staff could observe her behavior without medication and so they could begin new medications without other drugs interfering. Dr. Christensen testified that the medication wash worsened Graeber's symptoms. He explained that Clozaril is generally prescribed to patients who, like Graeber, have not responded to other neuroleptics. And he explained that the security hospital closely monitors patients' side effects. He opined that Graeber's prognosis is very poor without neuroleptic medication and that Clozaril is the "only antipsychotic remaining that is likely to make an impact." Dr. Gratzer testified that he also supported using Clozaril because Graeber had failed to improve on other medications.

Graeber opined that Clozaril is unnecessary. She testified that medication causes her to experience mood swings, crying fits, and anxiety, and that, when she is not taking medication, she has felt less anxious, slept less, and attended her group meetings. Graeber's mother and sister also testified that they believed Graeber improved when she was off medications.

The district court issued an amended *Jarvis* order, finding that Clozaril had been inadvertently omitted from Dr. Gratzer's prior recommendation. The court rejected as incredible the testimony that Graeber's mother and sister had offered, and it found that Graeber had continued to be "actively psychotic," consistent with her past behavior. It therefore authorized up to 900 milligrams of Clozaril daily.

Graeber appeals.

# D E C I S I O N

## I

We will affirm a district court's order authorizing use of neuroleptic medication unless its findings are clearly erroneous. *In re Civil Commitment of Raboin*, 704 N.W.2d 767, 769 (Minn. App. 2005). Court approval is required to administer neuroleptic medications when a civilly committed patient refuses the treatment. Minn. Stat. § 253B.092, subd. 8(a) (2014). The order must specify which medications the court is authorizing. *Raboin*, 704 N.W.2d at 771. For *Jarvis* orders, courts must consider whether the patient has capacity to make decisions regarding neuroleptic medication, and if the patient lacks capacity, what a reasonable person would do under the circumstances. Minn. Stat. § 253B.092, subds. 5, 7 (2014).

The district court originally found that Graeber lacked capacity in its first *Jarvis* order, which Graeber did not appeal within the statutory period. We therefore address only the district court's implied determination as to whether a reasonable person under the circumstances would consent to treatment with Clozaril.

The district court considers several factors when making this determination. Among other things these include the patient's values, the medical risks and benefits, treatment alternatives, and the past efficacy of neuroleptic medications. *Id.*, subd. 7(c). Although Graeber has often opposed using any neuroleptic medications, the district court found that she was willing to try Clozaril. This finding in turn supports the conclusion that Clozaril does not apparently conflict with Graeber's values. The district court received medical

testimony that favorably balanced Clozaril's potential benefits against its potential side effects and that patients are closely monitored to identify and respond to any side effects. Dr. Christensen testified that 900 milligrams daily is the maximum dosage, and Dr. Gratzer testified that he supported using Clozaril up to 900 milligrams daily. This testimony is sufficient for the district court to find unpersuasive the testimony of Graeber's mother, who had contended that 900 milligrams is too much.

## II

Graeber includes an untimely challenge that we do not consider. She argues that the district court was bound to maintain her medication-free for six months to observe whether her improvement continued. But only the district court's amended *Jarvis* order is before us, not the earlier order in which the district court found that Graeber was not competent to consent and that she needed neuroleptic medications. A party has only 60 days to appeal from any order under the civil commitment provisions. Minn. Stat. § 253B.23, subd. 7 (2014). The amended order, which Graeber timely appealed, essentially added Clozaril to the other medications that the district court had previously authorized. Although we have addressed that appeal and Graeber's challenge to the Clozaril authorization specifically, we will not review the previous order from which she did not timely appeal.

**Affirmed.**